THE PEOPLE ex rel. ALFRED A. HOWLETT et al., Respondents, *v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF SYRACUSE, Appellants.

A commissioner, appointed under the charter of the city of Syracuse (tit. 8, chap. 63, Laws of 1857), to ascertain and assess the damages for lands taken for streets, is not disqualified from acting by the fact that he is a trustee of a religious corporation owning premises liable to assessment for benefits.

The office of trustee does not confer upon him any legal interest in the property of the corporation, or impose upon him any personal liability for its debts or assessments.

Where one of three commissioners, appointed under said act, dies after the award of damages is made, but before the assessment, the power to make the assessment is not extinguished; but vests in, and may be exercised by, the two surviving commissioners; inasmuch as there is no provision for filling the vacancy.

*People v. Nostrand* (46 N. Y., 375) distinguished.

Under the provision of said charter (§ 4, tit. 8), requiring the commissioners to assess such part of the expenses of a street improvement "upon the city, and such part locally as they shall deem just," the commissioners are not imperatively required to assess any portion of the expense upon the city, but only in case it is, in their judgment, just to do so.

An assessment, therefore, imposing the whole burden upon the property benefited is not for that reason invalid.

In the assessment of church property held by a religious corporation under a restricted power of alienation and use, the rule making the market value of the property the sole guide may be departed from, and it is proper to take into consideration the use to which the property is devoted.

In ascertaining what the relative benefit is to different parcels of land, their situation and relative adaptation to uses which would be promoted by the improvement, may properly be considered.

In making an assessment under said charter for the expenses of opening an alley, the commissioners took into consideration the fact that the improvement would remove a large barn building and stable, which, as

they state, was in "dangerous proximity to a portion of the property assessed." *Held,* that the advantages resulting from the removal were not of a character so remote, uncertain, and conjectural as to vitiate the assessment because they were considered.

*People ex rel.* v. *City of Syracuse* (2 Hun, 433) reversed.

(Argued November 19, 1875 ; decided November 30, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, vacating and setting aside an assessment for the expense of opening and extending an alley through a block in the city of Syracuse, the proceedings in reference whereto were brought up for review by certiorari. (Reported below, 2 Hun, 433.)

Three commissioners were appointed to award damages and assess the expenses of the improvement, as prescribed by the city charter. A former assessment was set aside upon certiorari, and before the reassessment one of the commissioners died. The surviving commissioners went on and completed the assessment. No portion of the expense was assessed upon the city. Due notice was published of a meeting of the commissioners to hear objections, at which time parties appeared and filed objections. These were overruled by the commissioners, who signed the assessments and filed the same with the clerk of the city. The relators appealed to the common council, who affirmed the assessment. On the hearing before the commissioners it was admitted by them, and reduced to writing as a part of the proceedings, as follows :

" First. That said Harmon W. Van Buren (one of the commissioners), was, during all the time that proceedings were had relating to the opening and extending of said alley, down to the time of said hearing, a trustee of the First Presbyterian church, in the city of Syracuse.

" Second. That said Presbyterian church holds it land in fee simple with the usual power of alienation.

" Third. That the 106 feet of land fronting on Salina street, belonging to said Presbyterian church and included in said assessment, is worth, exclusive of erections, as much or more

by the front foot as an equal number of feet adjoining it on the south.

" Fourth. That in making the assessment upon the property belonging to the said Presbyterian church at $600, and then upon the property of H. A. Dillaye, immediately south of the same, at $1,124, said Dillaye's property being twenty-six feet front on Salina street, the assessors took into account the fact that the first was used for church purposes only, and the latter for commercial purposes only, as well as the fact that the said church had a frontage on Fayette street as well as on Salina street, and was thereby less benefited by said improvement, and that said alley was not needed for access to the church itself. That they also took into account in said assessment, that this improvement removed from said Dillaye's property, and the property of others adjoining him on the south, an extensive barn building, and stable, which was in dangerous proximity to said property, and that said pieces of property were assessed by them as they deemed the same respectively benefited by said improvement."

*Geo. F. Comstock* for the appellants. It was for the commissioners to determine whether the city should be assessed. (Laws 1857, chap. 63, § 4, title 8.) When the principle upon which an assessment is made is correct, it will not be disturbed on account of the *quantum* of the assessment. (*Ex parte Mayor, etc., of Albany,* 23 Wend., 277.) It was not error for the commissioners to consider, in making the assessment, that part of the property was used for the purpose of a church and not for business purposes. (*In re Mayor of N. Y.,* 11 J. R., 77; 11 Wend., 149; *Ex parte Mayor, etc., of Albany,* 23 id., 277.) The fact that one of the commissioners was a trustee of a corporation liable to be assessed for benefits, did not disqualify him. (*People* v. *Wheeler,* 21 N. Y., 82; *In re S. Seventh St.,* 38 Barb., 15, 17.) One of the commissioners having died the survivors possessed all the powers of the three and had power to make the reassessment. (Laws 1857, chap. 63, §§ 2, 3, title 8; *Downing* v. *Rugar,*

21 Wend., 178; *People* v. *Palmer*, 52 N. Y., 84, 88; *Cruger* v. *H. R. R. R. Co.*, 12 id., 197; *Horton* v. *Garrison*, 23 Barb., 176; 3 R. S., 27, § 133; Laws 1874, chap. 321.)

*L. W. Hall* for the respondents. The proceedings should be set aside because no assessment was made on the city. (*In re Turflee*, 44 Barb., 46; *Le Roy* v. *Mayor*, 20 J. R., 430.) It was error for the commissioners to consider the use to which the houses and lots were devoted. (*Canal Bk.* v. *Mayor of Albany*, 9 Wend., 244, 257; *In re Furman St.*, 17 id., 649; *In re Albany St.*, 11 id., 153; *In re William St.*, 19 id., 691; *In re Mayor, etc.*, 11 J. R., 77.) It was error to consider, in estimating the assessment, the removal of the barn building and stable. (*Alb. N. R. R.* v. *Lansing*, 16 Barb., 68; *W. and R. R. R. Co.* v. *Sanftee*, 60 Penn. St., 374; Sedg. on Meas. of Dam., 718.) The reassessment is void because the vacancy occasioned by the death of one of the commissioners was not filled before making it. (3 R. S., § 27, title 17, chap. 8; *People ex rel. Henry* v. *Nostrand*, 46 N. Y., 375; *People ex rel. Moran* v. *Mayor, etc.*, 5 Barb., 43; *Lambeer* v. *City of N. Y.*, 4 Sandf., 109; *Keeler* v. *Frost*, 22 Barb., 400.) One of the commissioners being a trustee of a corporation assessed was disqualified. (*Hopkins* v. *M.*, 42 How., 115; *People* v. *Cline*, 23 Barb., 197; *Langley* v. *City of Hudson*, 4 N. Y. S. C., 353.)

Andrews, J. The proceedings for assessing the expense incurred in opening and extending the alley upon the property of the relators and others benefited by the improvement are assailed and their validity is questioned upon several grounds: 1st. That one of the two commissioners who made the assessment was at the time of his appointment and of the assessment a trustee of the Presbyterian church, a religious corporation owning a lot on which a church edifice was erected which was liable to assessment, and that he was therefore incompetent to act by reason of interest. 2d. That the power to make the assessment is, by the charter, vested in three commissioners, and that it did not survive to and could

not be exercised by two commissioners upon and after the death of their associate. And 3d. That the commissioners erred in the principle upon which they proceeded in making the assessment.

It is a fundamental principle in the administration of justice, that no man can be a judge in his own cause, and the exercise by a judge of judicial functions in a case where he is a party, or in which he is interested, is contrary to natural justice and is inhibited by the common law and in this State by statute. (2 R. S., 375, § 2.) But the statute applies to judges of courts only (21 N. Y., 86), and the fact that one of the commissioners was a trustee of a religious corporation liable to assessment, did not make him interested within the general principle adverted to. It does not appear that he was a pew owner or had any pecuniary interest which would be affected by an assessment of the church property. The title was vested in the corporation. The trustees are charged with the control and management of the temporalities of the church, but are not subject to personal liability for its debts or assessments.

In *Dimes* v. *Proprietors of Grand Junction Canal* (3 H. L. Cas., 759) the chancellor had affirmed a decree of the vice-chancellor in favor of the canal company, in a suit brought by the corporation affecting its rights and property, in which corporation the chancellor held shares both as an individual and as trustee. The House of Lords, after an elaborate discussion and consideration, held that the chancellor was incompetent to sit in the case by reason of interest, but it was admitted on the argument that if his interest had been that of a trustee only he would not have been disqualified.

The duty imposed upon the commissioners of assessments in this case required the exercise of judgment and discretion. This is true, to a greater or less extent, in most cases of boards appointed for the discharge of duties connected with the administration of the local affairs of municipalities, but it has not been supposed that a remote interest in the subject to which the appointment relates would disqualify a member of the board

from acting under his appointment. Great public inconvenience would result from establishing such a rule. There are many town and city officers who are called upon to discharge public duties which may remotely affect their pecuniary interests. Assessors are officers of this kind, but they are not incapacitated from assessing the property of other citizens by the fact that they own property also liable to assessment, the taxation of which may be affected by the rate of assessment of the other property within their jurisdiction. In the proceeding under consideration the parties were the public and the owners of the property liable to assessment. The commissioner who was trustee was not the owner of or interested, in a legal sense, in the property of the religious corporation of which he was an officer, and was not disqualified from acting as commissioner.

The objection is also taken, that the two surviving commissioners could not act after the death of their associate. The charter (tit. 8, § 1, Laws of 1857), provides for the appointment by the County Court, upon the application of the common council, and upon notice to the persons owning property proposed to be taken for a street, highway or alley, of three commissioners to "ascertain and report the just compensation to be paid to the person or persons owning or having an interest" therein; and no further or other power is conferred upon the court in respect to the appointment of commissioners, except the power to appoint a commissioner in place of one who declines to serve, and to appoint new commissioners when the court shall modify or disapprove the report of the commissioners first appointed, assessing the damages to the owner of the land taken for the improvement.

The only power of appointment conferred on the County Court is to appoint commissioners to appraise the damages, and this can only be exercised before proceedings are taken for the assessment of benefits. By section 4 it is provided that, upon the completion and final confirmation of the award, the common council "shall direct the commissioners

making the award " to assess the amount awarded for damages upon the property benefited, etc. But no provision is made for filling a vacancy in the commission, or for appointing a new commissioner, either by the court or the common council, after the award of damages shall have been made.

Power is given, by section 10, title 6, to the common council to order a reassessment when any tax or assessment shall be void, or have failed for want of jurisdiction, or for irregularity, but this section does not authorize the council to fill a vacancy or appoint new commissioners to make the assessment. The evident intention of the statute is, that the commissioners making the award of damages shall make the assessment for benefits. In this case, the three commissioners united in making the award of damages for the property taken, but one of them died before the final assessment for benefits was made. Unless the two surviving commissioners could act, there would be a failure of justice. The proceeding would be suspended, and new legislation would be required before further steps could be taken. The case is brought within the principle of *The People* v. *Palmer* (52 N. Y., 84), that a power conferred upon three or more persons for a public purpose is not extinguished by the death of one, where no provision exists for filling the vacancy, but vests in the survivors. The case is not in conflict with the previous decision in *The People* v. *Nostrand* (46 N. Y., 375). The statute under which the proceedings in that case were taken provided for filling a vacancy in the commission.

The objection that no part of the damages was assessed upon the city is not well taken. The principle upon which the assessment is to be made is declared in section 4, title 8, as follows : " The commissioners shall proceed to assess such amount upon the property benefited by the improvement in a just and equitable manner, as near as may be, in proportion to the benefits received. Such assessment shall be made in the same manner as the assessment for building sewers, except that such commissioners shall direct such part of said expenses to be assessed upon the city, and such part locally, as they shall

deem just." The commissioners in their return state, "that they did not assess any part of the expense upon the city of Syracuse, because they deemed the improvement to be all local in its benefits, and that it was not just to assess the city at large therefor."

It is claimed that, by the true construction of the statute, the commissioners were imperatively required to assess some part of the expense of the improvement upon the city. It is quite reasonable to suppose that the benefit from opening an alley in the center of a block, so as to give access to the rear of lots fronting on streets, would be substantially confined to the owners of the adjacent property. In laying out and opening a street designed for general use, the city at large is benefited, and special benefits in ordinary cases also result to the owners of property on or near the line of the improvement. In such case it is just and equitable that the city should bear its proper proportion of the expense. So, also, if the expense of open-ing an alley exceeded the benefit to the adjacent prop-erty, it would seem to be just that the excess should be paid by the city at large. The statute was, we think, designed to meet such cases, and was not intended to require any part of the expense of opening alleys and streets to be assessed upon the city, unless in the judgment of the commissioners it was just to do so. The commissioners are authorized to assess such part of the expenses upon the city as they "shall deem just." They must first determine that the city ought justly to pay a part of the expenses before the right to assess the city at all attaches. If the construction claimed by the relators should be adopted, it would still be competent for the commissioners to make a nominal assessment upon the city, if, in their judgment, no real benefit resulted to the public from the improvement, and the same result, in substance, would be reached as under the construction adopted by the commissioners. The legislature has not left it in doubt, when it designed to require the city to pay a share of the expense of improvements. It is pro-vided that when a sewer more than two feet in diameter shall be built, the excess of cost over that of a two-foot sewer shall

be borne by the city (chap. 234, Laws of 1871, § 1), and when a street is paved for the first time the common council is authorized to assess one-half of the expense locally. (Laws of 1868, chap. 500, § 3.)

Objection is also taken to the assessment, on the ground that the commissioners in assessing the church property took into account the use to which it was applied. The commissioners, in their return, say that in making the assessment they took into account the fact " that the church property was used for church purposes only, and the other for commercial purposes only, as well as the fact that the said church had a frontage on Fayette street as well as Salina street, and was, therefore, less benefited by said improvement; and that said alley was not used for access to the church; and that both of said pieces of property were assessed by them as they deemed the same respectively benefited by said improvement."

In assessing the expenses of street improvements upon the property benefited, the general rule is to consider the effect of the improvement upon the market value of the property, and to make the assessment in view of that fact, without regard to the present use or the purpose of the owner in relation to its future enjoyment. This was so held *In the Matter of William and Anthony Streets* (19 Wend., 690). But in that case the court referred to the cases, *Matter of the Mayor, etc.* (11 J. R., 77), and *Matter of Albany Street* (11 Wend., 150), which held a different rule in respect to the assessment of property of a religious corporation, and did not undertake to overrule them, but distinguished them, on the ground that church property owned by a religious corporation is held under a restricted power of alienation, and cannot, without the sanction of the court, be applied to a new or different use. It is quite apparent from the location of the church, that no access to it from the alley was required, and that it was in any view·much less benefited by the improvement than the adjacent property; and in view of the use to which church property is devoted, which in most cases

is a permanent one, and of the qualified power of disposition over it, it seems to be reasonable that the exception to the rule of market value, as the guide in making the assessment, should be sustained, and we do not feel at liberty to disregard the decisions referred to. It is stated in the return that the church holds its property in fee simple, with the usual power of alienation. This can only mean that it is held with the power of alienation usually possessed by religious corporations. We think, therefore, that the objection to the principle upon which the commissioners proceeded in assessing the church property cannot be sustained; and if they erred in the *quantum* of the assessment that error is not reached by the writ of certiorari. (*Ex parte Mayor, etc.*, 23 Wend., 277, and cases cited.)

The further objection is taken that the commissioners, in making the assessment, regarded the fact that the property on one side of the alley, fronting on Warren street, was used for residences, and on Salina street for business purposes. It is quite certain that the opening of the alley was of greater benefit to the property used for purposes of business than to that located on Warren street, which by reason of its less depth made it less desirable as a location for business. Several of the relators joined in the petition on which the common council acted in ordering the improvement, and it was represented therein that the improvement would "greatly increase the business facilities of persons doing business in the vicinity." The property benefited is by the statute to be assessed according to the benefits received. In ascertaining what the relative benefit is to different parcels of land, the situation of the different lots and their relative adaptation to uses which would be promoted by the improvement may properly be considered. Whether access to them is needed, and to what extent the beneficial enjoyment would be increased by the improvement, may properly be regarded by the commissioners. Taking the whole return, it does not appear that the commissioners departed from the rule laid down in 19 Wendell (*supra*).

The commissioners, in ascertaining the benefits, took into

account the fact that the opening of the alley would remove an extensive barn building and stable, which they state was in "dangerous proximity to a portion of the property assessed." Benefits resulting to the improvement which are remote, uncertain and conjectural, ought not to be considered. But the advantage resulting from the removal of a building, hazardous from its position and use, is not of that character; and the assessment, which is to be made upon equitable principles, is not, we think, void, because the commissioners took into consideration the incidental benefit which must certainly result from the removal of the barn, to the adjacent property.

Upon the whole case, we are of opinion that the commissioners acquired and acted within their jurisdiction, and that no error of law was committed by them, and that the judgment of the General Term should be reversed, and the proceedings and assessment of the commissioners affirmed.

All concur.

Judgment accordingly.