STATE OF MINNESOTA *ex rel.* Joseph Burger and others *vs.* DISTRICT COURT OF RAMSEY COUNTY.

33  295
57  300
33   295
f82  369

## April 2, 1885.

**St. Paul—Street Improvements—Assessments.**—The city of St. Paul was authorized, under its charter, to proceed to complete the improvement undertaken in pursuance of Sp. Laws 1881, *c.* 224, as amended Sp. Laws 1883, *c.* 57, and to levy an assessment upon real property in the vicinity found specially benefited thereby, to meet the cost and expense thereof not covered by the proceeds of the bonds of the city issued under such special act. The provisions of the charter and of the special act are to be deemed consistent for the purposes of such improvement.

**Same—Improving Several Streets as One Entire Improvement.**—Under the provisions of the charter, the work of grading, filling, and bridging on a public street, and also the grading of other streets in connection therewith, may be so connected together as to be properly carried on in common, and be prosecuted as one entire improvement, for which a local assessment may be made by the board of public works on property specially benefited thereby.

**Same—"Seventh Street Fill"—Occupying Land Adjacent to Street.** The improvement in question in this case included an embankment, which, at its base, necessarily extended beyond the limits of the street. *Held* competent for the legislature to provide, as was done in the special act referred to, in aid of the proceedings under the charter, for the acquisition of the proper easement or license to so use and occupy the adjoining lands for such purpose, saving to the land-owner the right to use the land abutting on the street as graded. In the absence of any suggestion that the extension of the fill upon adjoining premises was not made in conformity with law, or that the same could in any way depreciate their value by the change wrought by the permanent improvement made thereon, evidence that they were under mortgage was immaterial.

**Same—Sp. Laws 1881, *c.* 224, § 2—Discretion of City Council.**—Section 2 of the act of 1881, in reference to the grade of East Seventh street, as properly construed with other provisions of that act, was not mandatory upon the city council so as to require it to complete the grading of that street to the city limits as a part of the improvement contemplated, but the extent of the grading thereon was made subordinate to the gen-

eral purposes of the act, and was largely committed to the discretion of the council.

**Same—Powers of Board of Public Works—Improvement, when Local.** As respects the proceedings of the board of public works in making a local assessment under the charter, the determination of the board in reference to the assessment district, and what property shall be included or excluded therefrom, and in the apportionment of the amount of benefit to each lot or parcel, is final, except in case of fraud or mistake. And whether a public improvement can be deemed local in its character does not depend upon its extent or cost, though these are elements to be considered, (and the assessment can in no event exceed the special benefits to the property so locally affected,) but must depend upon the determination of the city council and board of public works, to whose judgment the matter is committed by the legislature, to be determined largely as a question of fact. And if it be found that property in the vicinity of the improvement is so situated and related to it as to receive special benefits in the enhancement of its value beyond that of property generally, the improvement may, for the purposes of a special assessment, be deemed local, though the property in the city or ward is also generally benefited.

**Same—Extent of Assessment District, how Determined—Fraud—Mistake.**—The extent of the assessment district must depend upon the facts of each case; but where, in any case, it is made clearly to appear that through fraud or mistake property is improperly included or excluded, the court may interfere to vacate or set aside an assessment.

**Same—Meaning of "Local" and "Vicinity."**—The terms "local" or "vicinity," as used in connection with such assessment proceedings, indicate no definite limits, but are usually understood to extend to real property sufficiently near and so related to the improvement as to be found specially benefited, in addition to the general benefits accruing to other property, as reported by the proper assessors.

**Same—Principles Applied.**—Application of these principles to the facts of this case.

*Certiorari* to the district court for Ramsey county, to review the action of that court in ordering judgment, *Brill,* J., presiding, confirming an assessment made by the board of public works of the city of St. Paul to pay a large portion of the expense of grading, filling, and bridging Seventh street and portions of certain adjacent streets. The total amount of the assessment, (which is exclusive of the amount raised by general taxation,) as confirmed, is about $160,000, and it is

distributed over a large portion of the easterly half of the city of St. Paul, as shown generally on the following diagram. The property assessed is, substantially, all that included within the dotted lines, and the portions of streets graded are indicated by the heavy lines.

It appeared from the evidence that the fills were from 80 to 90 feet deep and about 600 feet long, being 66 feet wide at the top and 318

feet wide at the bottom.   The masonry and bridge cost about $60,000, and were paid for out of the proceeds of the sale of the $65,000 of bonds authorized by Sp. Laws 1883, c. 57.   It also appeared from the evidence that a large portion of the property assessed was unimproved, rough, and hilly, and that there was no way of identifying accurately the lots and blocks on the ground excepting by a survey. The assessment was made on the lots and blocks, and there was no evidence showing that any survey was made for the purpose of making the assessment.

*James B. Beals*, for relators.

The assessment-roll is void on its face.   It appears that the assessment was made for grading seven streets and the construction of a viaduct, culverts, abutments, retaining walls, piers and an iron bridge.   *Mayall* v. *City of St. Paul*, 30 Minn. 294;  *People* v. *Hulburt*, 46 N. Y. 110.

The improvement in this case is only authorized by Sp. Laws 1881, c. 224, as amended by Sp. Laws 1883, c. 57.   In the absence of this special legislation there was no authority in the city charter to make it.   The act of 1881 gave the city authority to levy an assessment in a certain way.   The act of 1883 having repealed the provision as to mode of assessing, it only remained for the city at large to pay for the improvement.   *Nash* v. *City of St. Paul*, 8 Minn. 143, (172;)  *Moore* v. *Mayor*, 73 N. Y. 238, 249;  *Matter of Second Ave. Church*, 66 N. Y. 395;  *First Presb. Church* v. *City of Fort Wayne*, 36 Ind. 338, 345; *State* v. *Linn Co. Court*, 44 Mo. 504;  *County of Ramsey* v. *Stees*, 28 Minn. 326.   A statutory remedy is exclusive, and this although such statutory remedy be impracticable or insufficient.   *City of Faribault* v. *Misener*, 20 Minn. 347, (396.)

The assessment is void because the city never improved the street beyond Minnehaha street, which is within and one mile west of the city limits, and never considered the matter of removing earth from such part, but is making the fill from earth taken from other places. *State* v. *Ames*, 31 Minn. 440.   Further, there is no semblance of power given in either act to assess for masonry.

The record of the board of public works is wholly insufficient.   There is no order, determination, or certificate showing that the statutory

rule has been complied with. *State* v. *District Court,* 29 Minn. 62; *State* v. *Trenton,* 36 N. J. Law, 499, 505; *State* v. *Mayor,* 35 N. J. Law, 381, 386; *Village of Passaic* v. *State,* 37 N. J. Law, 538; *Chamberlain* v. *City of Cleveland,* 34 Ohio St. 551; *State* v. *Comrs.,* 38 N. J. Law, 190; *Merritt* v. *Portchester,* 71 N. Y. 309.

The improvement for which the assessment in this case was made is not *local* within the meaning of the state constitution. *Rogers* v. *City of St. Paul,* 22 Minn. 494, 507; *In re Saw-mill Run Bridge,* 85 Pa. St. 163; *Chamberlain* v. *City of Cleveland,* 34 Ohio St. 551, 561; *Johnson* v. *City of Milwaukee,* 40 Wis. 315; *Hill* v. *Higdon,* 5 Ohio St. 243; Cooley on Taxation, 419; *Washington Ave.,* 69 Pa. St. 352, 364. It never was contemplated that assessments should be made over six square miles of territory.

The mode of making the assessment was illegal. Sp. Laws 1874, *c.* 1, *subc.* 7, § 71; *Johnson* v. *City of Milwaukee,* 40 Wis. 315; *State* v. *Bd. of Public Works,* 27 Minn. 442.

*W. P. Murray,* for respondent.

VANDERBURGH, J.[1] An assessment having been made by the board of public works of the city of St. Paul for a large portion of the expense of grading and bridging Seventh street over, through, and beyond Trout Brook and Phalen's valley, so called, and as far east as Minnehaha avenue, including bridge, culverts, and masonry, and also the grading of several lateral streets extending out for a limited distance on either side of Seventh street, an application was duly made for judgment thereon to the district court of Ramsey county, which, having been duly ordered and entered, is brought here for review by writ of *certiorari* upon the record of the proceedings.

The improvement in question appears to have been inaugurated in pursuance of Sp. Laws 1881, *c.* 224, as amended by Sp. Laws 1883, *c.* 57. By the first section of the act of 1881, the common council of the city of St. Paul were authorized and required to construct a permanent and substantial street-crossing over and through the valley of Phalen's creek, on the line of East Seventh street, in said city, with all "necessary earth embankments and all work connected with

[1] Gilfillan, C. J., because of interest, took no part in this case.

said improvement, including a culvert over said creek sufficient in size and capacity to admit the waters of said creek to pass under said roadway, and of sufficient strength to support an earth embankment and roadway of not less than 66 feet in width on the top, at grade, with proper slopes or retaining walls."

It is also provided (sections 7 and 10) that earth to be removed in grading Seventh street, and deposited so as to form part of the embankment, should be paid for at the rate of six cents per cubic yard; the balance of the cost of removing the same to be assessed by the city upon property benefited by such improvement, to the extent of the benefit; the balance of the expense not so assessable to be paid for out of the proceeds of bonds provided for by the act. And, by section 11, bonds were authorized to the amount of *fifteen thousand dollars*, to be used for the purposes named in the act. By the act of 1883, sections 7 and 10 above referred to were repealed, and section 11 was amended so as to authorize the issuance of bonds to the amount of *sixty-five thousand dollars*, to be applied to "the cost and expense of the construction of a culvert over Phalen's creek and a culvert over Trout Brook on the line of Seventh street, and the cost and expenses of such other masonry as may be necessary in Phalen creek and Trout Brook valley on the line of Seventh street, in making a permanent roadway over said valleys."

In connection with the main improvement authorized by the first section of the act of 1881, it is, by section 2 of that act, made the duty of the common council "to change the present grade of said (Seventh) street if deemed necessary for the improvement named in the first section of this act, and to establish the permanent grade of said East Seventh street from some point on said street westerly of said valley to the eastern limits of said city, and to provide that all the earth to be removed in improving said street in accordance with the grade so to be established, shall be deposited in said valley, and form a part of said embankment and roadway, unless earth for said purpose can be obtained cheaper elsewhere."

By section 5, in order to the successful construction of an earth embankment of the required height, the council was authorized to contract with the owners of property adjacent to the line of the street in

the valley for the right or license to use such lands for the base and slopes of the embankment, leaving such owners the right to use the lands so improved for building improvements abutting on the road-way, upon such conditions and stipulations as might be deemed proper by the council.

It will be observed that the main purpose of this legislation was to secure a permanent roadway across and over these valleys on the line of the established grade of Seventh street, involving also, as a part of the improvement, the grading of Seventh street, and also to provide, through the issuance of bonds, for a part of the expense (and a part only) of making the improvement.   But as respects the grad-ing of Seventh street we may refer in passing to the provisions of section 2, that while it is apparent that it was contemplated that earth for the embankment would naturally be obtained from that source, yet the council were not limited to that street if earth could be found cheaper elsewhere.   Of this, however, we will speak in an-other place.

1. It is insisted by the relator that for the improvement contem-plated by this legislation no assessment was warranted, because the undertaking is specially authorized thereby, and no provisions are made in the act as amended for such assessment.   The terms of the act are very general.   As amended, it contemplates an earth em-bankment in Phalen's valley, and culverts and masonry in both val-leys, for the construction of a permanent roadway over both, and provides for an appropriation by the city to meet the extraordinary expenses of such improvement, having reference specially to the culverts and masonry.   The legislature has indicated nothing further in reference to the plan, construction, or cost of the improvement, but the details and the procedure were, we think, left to the council to work out under the authority of the charter.   We do not doubt the correctness of the position of the city attorney that, if this is a local improvement, the city council might proceed, as in other cases of grading, filling, and bridging streets, to cause the cost of the same to be assessed upon property found specially benefited, to the extent of such benefits.   The object of the legislation is sufficiently appar-ent from what has been said, and there is no restriction or limitation

placed upon the authority of the council to proceed under the charter, as in other cases, to do the work and make the improvement outlined by the legislature; and there seems to be no good reason why the special act should not be consistently construed with the charter.

We must therefore look to the charter to ascertain the nature and extent of the authority of the council in the premises, in reference to such assessments. Considered as an ordinary assessment for a street improvement, the production of the assessment warrant made a *prima facie* case for the city. City Charter of St. Paul, (Mun. Code, St. Paul, § 190,) *c*. 7, tit. 1, § 54; Sp. Laws 1874, *c*. 1; Sp. Laws 1875, *c*. 1; *State* v. *District Court of Ramsey County, ante*, p. 164. It therefore appeared, *prima facie*, that everything necessary to the validity of the assessment had been done. This would include the action of the council and board of public works in determining that the improvement was a local one, and that real estate could be found benefited to the extent of the expense necessarily incurred thereby; and also, as respects the grading of streets, that it was a case where, in the grading and filling necessary to be made upon Seventh street, other streets connected therewith might also be graded at the same time, and that they were, in fact, so graded together as one improvement, as authorized by section 5, chapter 7, City Charter. *Mayall* v. *City of St. Paul*, 30 Minn. 294.

The map or profile of this work gives support to this conclusion, for the several streets so graded open into Seventh street, and are graded but a short distance out therefrom, as before indicated; being so situated as conveniently to furnish earth for the embankment, and so connected with Seventh street as to make one common improvement.

2. The objection, therefore, which we proceed secondly to consider, viz., that "the assessment was void because it appeared to have been made for several improvements which cannot be united in one assessment," is not to be sustained as respects the grading of these streets.

The bridge over the St. Paul & Manitoba railroad, which is located on Trout Brook valley, and culverts and other stone-work in both valleys, not fully paid for by the bonds authorized, are also objected to as improperly included in the assessment. These are contemplated by the special legislation, which directed the initial point of the grade

for the improvement to be fixed west of Trout Brook, and authorized the culverts and masonry which were used for the bridge. The work was evidently intended to be one entire improvement, each part necessary to the other. The charter (chapter 7, tit. 1, § 2) authorizes the city to make assessments for improvements of this character on property to be benefited thereby, including filling, grading, curbing, bridging, walling, and macadamizing streets; and whether uniting several of these shall be deemed to constitute one entire improvement, for which an assessment may be made upon property found to be benefited, must depend largely upon the facts of each case. For example, in *State* v. *District Court of Ramsey Co.*, 29 Minn. 62, it was considered that gutters and culverts might be included with grading. *Matter of Walter*, 75 N. Y. 354. It is clear, we think, that filling, grading, and bridging on a street may be so connected as to constitute a single improvement.

It appears from the records of the council that they made a separate reference to the board of public works of the work of grading the streets in question, and of the roadway or viaduct so called, over Phalen's valley, in which is situated the St. Paul & Duluth railway track, and of an iron bridge, abutments, and masonry over the St. Paul & Manitoba railroad, (Trout Brook;) but the board of public works, in their report to the council, included all these several portions of the work as together constituting one improvement, and certified that they had investigated the proposed improvement, and that the same was necessary and proper. They also reported that real estate to be assessed therefor could be found benefited to the extent of the cost, etc. And thereupon the city council adopted such report, and ordered that the board cause such improvement to be made in conformity therewith, and directed that the contract be let as provided by law, and that "after such work shall be placed under contract, said board shall proceed without delay to assess the cost thereof upon property to be benefited, as prescribed by law; it being the opinion of the council that real estate to be assessed for such improvement can be found benefited to the extent of the cost," etc.; the proceedings being in the usual course under the charter. This order, together with the approval of the contract by the council, constituted

the authority of the board to proceed. Charter, c. 7, § 28; *State* v. *District Court, supra.* As respects the specific objection now being considered, we are therefore unable to say that one assessment might not properly be made for the whole work. *Matter of Walter,* 75 N. Y. 354, 361.

No error is alleged in the formal proceedings of the council or of the board in failing to comply with the charter, in so far as such proceedings appear of record.

3. The charter (chapter 7, § 71) requires the board, in making an assessment for benefits, and "in estimating the benefits to any particular lot, piece, or parcel of land, to take into consideration the nature of the owners' interests, the form and position of their several parcels,   *   *   *   and any other circumstances which render the proposed improvement more or less beneficial to him or them; and the determination and assessment or estimate of benefits of said board shall be final, except where an appeal is expressly allowed," etc. It is claimed by the relator that these provisions were not complied with by the board, and also that by fraud or mistake property was improperly excluded from the operation of the assessment, and that the assessment was oppressive and unjust. Evidence was accordingly offered on both sides upon these issues, before the district court, and, taken together, though the opinions of witnesses greatly differ, we are unable to say that the court erred in overruling these objections to the assessment. As to the property omitted, it was left out, as the evidence on the part of the city tends to show, after careful examination and consideration by the board, because in their opinion its situation was such, in respect to the improvement, that it was not *specially* benefited thereby. Amid the conflict of opinions it is easy to see that there may have been errors of judgment on the part of the assessors. This is necessarily incident to the performance of such duties; but we think the assessment is not shown to have been fraudulent, or to have proceeded upon a wrong rule in including, excluding, or valuing property; nor does it appear that there was any lack of diligence in considering the nature of the interests of owners, or the condition or situation of the property assessed. The decision of the board on these questions is therefore conclusive. *State* v. *District Court, supra.*

4. It is also objected that the city was not authorized to make so wide a fill in Phalen's valley without previously widening the street by proceedings under the charter.     This is, however, answered by the suggestion that the right so to do was acquired in pursuance of the special act.    If the city may under its charter grade a street, and make a fill or embankment of a height such as that the earth shall necessarily extend beyond the limits of the street in order to support it, it is competent for the legislature to provide, in aid of the charter proceedings, for the acquisition of such rights as were authorized in this case.    The necessary right or easement was acquired in accordance with the provisions of section 5, act of 1881, saving to the land-owner his right to the use of the land abutting on the street as graded.    It is not material that the land was mortgaged.    It is not suggested that the security was or could be impaired by the improvement, and the city appears to have complied with the statute in proceeding with it.    We do not see, therefore, that the relator is in a position to object on this ground.    *Matter of Ingraham,* 64 N. Y. 310.

5. It is further insisted that the assessment is unauthorized, because the city changed the grade and improved Seventh street to Minnehaha avenue only, while the act of 1881 contemplated a change in the grade and the establishment of the permanent grade to the city limits.    We have not failed to give due consideration to this objection, and are of the opinion that for the purposes of this improvement so much was left to the judgment and discretion of the council as to the extent of the grading to be done in connection therewith, that we are unable to say that the failure to fix such grade beyond the intersection of Seventh street and Minnehaha avenue, about 10 blocks east of Phalen's creek, is material to the validity of the assessment.

By section 2, above referred to, the change of grade was to be made with reference to the improvement named in the first section, and the city council was not confined to the grading of that street in obtaining material for the embankment required to be made; and earth therefor was undoubtedly found more cheaply, as the evidence clearly shows, much nearer than on the easterly portion of Seventh street. It will be presumed, in favor of the validity of the proceedings in the

premises, that the grading on that street proceeded as far as was proper for the work.

The change of the grade and establishment of the permanent grade were required to be separate and independent proceedings under the charter, and had no further connection with this improvement than was essential for the purposes thereof; and the expense thereof could not be charged in the assessment of this work, but, when required, must constitute a separate undertaking. The whole matter was necessarily committed to the sound discretion of the council, so as to adjust the contemplated grading of Seventh street to the practical exigencies of the principal improvement, and the necessary economy in completing the work.

6. This brings us to the last point in the case material to be considered, and that is, whether the court is bound to say, upon this record, that the assessment in question is to be deemed made for a general and public, and not for a local, improvement. Such an assessment could not have been made prior to the constitutional amendment of 1869, which authorizes, through legislative intervention, assessments by municipal corporations for local improvements upon property to be benefited thereby, without regard to a cash valuation, and "in such manner as the legislature may prescribe." But taxes for local expenditure were required to be apportioned upon the property of a political subdivision or district, upon the basis of a cash valuation. *Stinson* v. *Smith*, 8 Minn. 326, (366.)

It is now, however, left to the legislature to prescribe in what manner assessments for local improvements shall be apportioned, so as to distribute the burdens thereof justly and equally, as nearly as may be, upon property to be benefited, or in proper cases upon abutting property. These special assessments proceed upon the principle that certain property, peculiarly situated in reference to an improvement, is to be specially benefited in the enhancement of its value, and in levying such assessments the principle of equality in their apportionment is deemed vital, as in ordinary cases of taxation under the constitution. *Noonan* v. *City of Stillwater*, ante, p. 198. But in the application of this rule in practice, the apportionment of benefits must be committed to the judgment of officers whose determination, while

acting within their jurisdiction, is ordinarily to be taken as conclusive in reference to the justice or propriety of the assessment as finally adjusted and completed.

Under this provision of the constitution it has been the common practice for the legislature to provide in municipal charters for local assessments for street and other improvements of the same general character, and for levying the cost in whole or in part upon property in the vicinity thereof, found specially benefited thereby. Such improvements being public in their nature, it is rare that a case arises where the general public do not share to a greater or less extent in the benefits, though in some cases, as of alleys or lateral streets or sewers, the benefit may seem to be peculiarly local. But it has never been contended that, in authorizing local assessments in pursuance of this constitutional provision, municipal authorities were to be limited to such improvements as are entirely local in their character. The city at large is benefited, and at the same time special benefits in ordinary cases result to the owners of property adjoining or in the vicinity of the improvement. If the special benefits to property so locally affected are equal to the cost of the work, then an amount not exceeding the whole cost may be assessed upon such property; but if the expense thereof exceed such benefits, then the city at large should in any event bear a portion of the burden. Cooley on Taxation, 447; Dillon, Mun. Corp. (3d Ed.) § 76; *People* v. *Mayor,* 63 N. Y. 291.

It would be difficult to state in what cases local assessments for benefits may or may not be made. In practice, the rule is usually adopted in the case of street improvements, sewers, water-mains, etc.; while, as respects public buildings or improvements of like general character, for the use of the people of a city or district, the burden is properly apportioned by a general tax upon the property of the whole city, or of the district peculiarly benefited. But in reference to the class of improvements which are under consideration here,—grading, filling, and bridging on a street,—for which such assessments are usually deemed applicable, this court has held that "the fact that the street to be improved is the most public thoroughfare in the city does not prevent the improvement from being 'local,' but the local character of the improvement depends upon the special benefit which

will result to the real property adjoining or near the locality in which the improvement is made." *Rogers* v. *City of St. Paul*, 22 Minn. 494, 507.

Now, whether, in any particular case, the improvement partakes of this local character, and creates such special benefits to property in the vicinity, as well, also, as the extent and character of such benefits, must ordinarily be deemed questions of fact, to be determined by the proper authorities as the legislature may prescribe. Under the charter, the city council, upon the report of the board of public works, is to determine whether property can be found benefited to the extent of the expense to be incurred by an improvement, and the board of public works are to ascertain the property to be benefited, and to make the assessment. In the case at bar, then, the fact that the improvement may open up a thoroughfare of great value and convenience to the city at large, or that it is extensive and costly, does not necessarily warrant the court in adjudging it one for which a local assessment may not be made upon property in the vicinity of the improvement if found specially benefited thereby; though these are elements properly to be considered by the authorities which are required to determine as to the propriety and extent of such assessment. The legislature has in this instance recognized the existence of these facts, and has specially provided that the city shall bear a large proportion of the expense.

The act of 1881, in providing for an assessment, was also a legislative determination of the fact that a special assessment was proper for the improvement thereby authorized. The legislative judgment in such cases, except in clear cases of abuse, is not reviewable by the courts. Cooley on Taxation, 460, 461. And, as respects the act as amended in 1883, it was for the council to determine, upon proper consideration of the question of benefits, whether the work was one which, together with the appropriations provided by the city, could be lawfully proceeded with under the charter by an assessment for benefits to meet the balance of the expense. And if, in the exercise of the large powers committed to their discretion, the board of public works have complied with the formal requirements of the charter, its action must necessarily be final, both as to what property is benefited,

and how much, except in case of fraud or palpable mistake, or unless it is made to appear that an improper rule has been followed in making the assessment. *State* v. *Board of Public Works,* 27 Minn. 442; *State* v. *District Court, supra.* At the same time every reasonable intendment of good faith and regularity is to be indulged by the court in respect to the acts of such officers, while acting within their jurisdiction in the discharge of such duties. *Matter of Episcopal School,* 75 N. Y. 324. The validity of the provisions of the charter on the subject was considered and upheld in *Rogers* v. *City of St. Paul, supra,* and in *Carpenter* v. *City of St. Paul,* 23 Minn. 232.

An assessment was determined to be proper in this case by the council. The improvement belongs to a class for which an assessment may be made under the charter, and the district court fails to find sufficient evidence of fraud or mistake in determining upon or adjusting such assessment to warrant its interference. The evidence offered leaves it clear that property within the district is specially benefited, but is conflicting as to the extent and proper distribution of the benefits. The determination of the district court as to these questions must therefore stand.

The relator, however, further insists that, in addition to the extensive nature of the improvement, the wide area covered by the assessment, upon the face of the record, conclusively shows that the limits of a local assessment were exceeded.

The question is of sufficient importance to merit serious attention. There must be some reasonable limit to the exercise of these legislative functions to prevent great injustice in the distribution of public burdens ur ⁻ ᵕ the guise of local improvements. But since the power is committed to the legislature to prescribe the procedure in such cases, it is difficult for the courts to define the limit to the exercise of such power. In *Guest* v. *City of Brooklyn,* 69 N. Y. 506, 517, Church, C. J., in commenting upon the necessity of proper safeguards for the rights of the citizen in such cases, very severely condemns the system of local assessments as generally authorized and administered in cities, as inevitably tending to injustice and oppression, but observes truly that the effective remedy is not with the judiciary, but with the legislative department of the government.

Ordinarily, the district assessed is so situated and related to the improvement that the assessment cannot be determined to be necessarily inconsistent with justice and propriety. But if in any case it were clear that property assessed was so remote or so situated as not to be specially affected by the improvement, it would properly be considered a case of fraud or mistake from which the court would relieve. In this instance, the improvement, including the bridge and viaduct, extends on Seventh street for about one mile, and it is claimed that an avenue was thereby opened up over the valleys to which all of the property assessed is naturally tributary, resulting in a special increase in the value of all the property in that locality included in the district. The general rule is to consider the effect of the improvement upon the market value of the property. *People* v. *Mayor,* 63 N. Y. 291, 299; Cooley on Taxation, 459. And if it be true that the value of this large number of lots, under the peculiar circumstances, is specially increased as compared with other property, by virtue of the improvement, the court cannot say that the improvement may not be considered local as respects the assessment district as fixed by the board.

The terms "local," "vicinity," etc., used in connection with such assessments, are not to be taken as indicating any definite limits, but are usually understood to extend to the real property reported by the assessors to be actually benefited to a certain amount. Burroughs on Taxation, § 146; *Rogers* v. *City of St. Paul, supra;* Cooley on Taxation, 429. The question does not, therefore, depend merely upon actual distances, as appearing upon the map or plat, but upon the judgment of the assessors as well. *Extension of Hancock Street,* 18 Pa. St. 26. Under the circumstances of the case, and as against the determination of the proper officers charged with the responsibility of determining the facts, though the assessment district is large, and the improvement extensive and of public importance, this court is unable to say that the assessment may not have been warranted.

Judgment affirmed.