THE COUNTY OF MONROE, Respondent, *v.* THE CITY OF
ROCHESTER et al., Appellants.

1. MUNICIPAL CORPORATIONS — ASSESSMENT FOR LOCAL IMPROVEMENT
— COLLATERAL ATTACK.  A party cannot dispute, by a collateral attack
(as, by an action to set aside the assessment upon his property and enjoin
its collection), the correctness of a municipal assessment for a local
improvement, where mere irregularities, or errors of a formal nature, have
been committed, or where the ground of complaint is in the excess of the
amount of the assessment over his due proportion.   The remedy in such a
case is by certiorari.

2. UNEQUAL ASSESSMENT.  Proof of facts showing merely a grossly
unequal assessment for a local improvement does not permit the inference
that the municipal officers adopted some erroneous principle which
resulted in the injustice complained of and which justifies the interven-
tion of the court, when appealed to through an action to vacate the assess-
ment on the plaintiff's property.

3. ERRONEOUS RULE OR PRINCIPLE — TRANSGRESSION OF JURISDIC-
TION.  To justify relief through an action to set aside an unequal local

assessment on the plaintiff's property, it must appear that, in the methods pursued in making the assessment, the inequality was, or may have been, due to some erroneous rule or principle. The facts should show that the municipal officers had transgressed their jurisdiction and that, in making the assessment, they had, in fact, disregarded the ordinance or resolution from which they derived their sole authority to act.

4. CLOUD ON TITLE — EXTRINSIC EVIDENCE. The rule allowing equitable relief by way of removal of cloud on title, when the claim or lien purports to affect real estate and appears on its face to be valid, and the defect in it can be made to appear only by extrinsic evidence, which will not necessarily appear in proceedings to enforce the lien, applies to an action which collaterally attacks a local assessment, by seeking to set it aside; but the extrinsic evidence, resorted to in such action, must show the defect relied upon to be one affecting the jurisdiction of the municipal officers.

5. FACTS SHOWING TRANSGRESSION OF JURISDICTION BY MUNICIPAL OFFICERS. A case for relief, in an action to set aside a municipal assessment upon the plaintiff's property for a street opening, is made out when, in addition to facts showing that the plaintiff's assessment was excessive and unequal, it appears that whereas the ordinance of the common council described specifically a certain territory as the portion of the city which was deemed benefited and proper to be assessed for the whole expense of the improvement, and required that the assessment should be made by the assessors upon the property described, the facts disclose that the assessors allowed themselves a latitude of authority in excess of that conferred and undertook to make exemptions with respect to the properties within the territory of assessment; that, after grading the territory into districts, they failed to apply a uniform rule in assessing the property so graded; and that they made unauthorized distinctions with respect to the uses of the properties coming under the assessment.

*County of Monroe* v. *City of Rochester,* 88 Hun, 164, affirmed.

(Argued November 30, 1897; decided January 11, 1898.)

APPEAL from an order of the General Term of the Supreme Court in the fifth judicial department, entered June 22, 1895, which reversed a judgment in favor of defendants, entered upon a decision of the court dismissing the complaint on trial at an Equity Term and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. J. Rodenbeck* for appellants. Respondent was bound to show affirmatively that the assessment was erroneous or illegal. (*Harriman* v. *Howe,* 78 Hun, 282; *In re Ingraham,*

64 N. Y. 310; *In re Merriam,* 84 N. Y. 596; *In re Brady,* 85 N. Y. 268; *In re Voorhis,* 90 N. Y. 668; *People ex rel.* v. *Davenport,* 91 N. Y. 581; *Tingue* v. *Vil. of Port Chester,* 101 N. Y. 294.) All questions concerning the assessment should be construed liberally to sustain the proceedings and with reference to the very right of the case, and not strictly, and all irregularities, omissions and errors not affecting substantial merits should be disregarded. (L. 1880, ch. 14, §§ 214, 215; *People ex rel.* v. *City of Rochester,* 5 Lans. 142; *Ireland* v. *City of Rochester,* 51 Barb. 433; *Hassan* v. *City of Rochester,* 67 N. Y. 528.) A failure to appear before the assessors on grievance day operated as a waiver of all but jurisdictional defects. (*In re Winegard,* 78 Hun, 58.) The assessors adopted the correct rule in assessing the property for the opening of the new street, and applied it uniformly to all the property assessed, and there being no irregularities which were not cured by the provisions of the city charter referred to, and the failure to present allegations, the assessment should stand. (*Elwood* v. *City of Rochester,* 43 Hun, 102; 122 N. Y. 229; *Collins* v. *City of Holyoke,* 146 Mass. 298; *Hoffeld* v. *City of Buffalo,* 130 N. Y. 393; *O'Reilley* v. *City of Kingston,* 114 N. Y. 448; *Clark* v. *Vil. of Dunkirk,* 12 Hun, 181; 75 N. Y. 612.) The other objections raised by the respondent to the assessment are untenable. (L. 1880, ch. 14, §§ 171, 181, 190, 199, 202, 206, 214; *Elwood* v. *City of Rochester,* 43 Hun, 108; *Wright* v. *City of Boston,* 9 Cush. 239; L. 1892, ch. 190, § 180; Suth. on Stat. Const. § 260; *Butts* v. *City of Rochester,* 1 Hun, 600; *Ireland* v. *City of Rochester,* 51 Barb. 434; *People ex rel.* v. *City of Rochester,* 5 Lans. 142; *In re Cruger,* 84 N. Y. 619; *In re Ingraham,* 64 N. Y. 310; *Hassen* v. *City of Rochester,* 65 N. Y. 516; *In re Ryers,* 72 N. Y. 1; *People ex rel.* v. *Mayor, etc.,* 63 N. Y. 295; *O'Reilley* v. *City of Kingston,* 114 N. Y. 450.) If the assessors did not proceed upon some erroneous principle in spreading the assessments, the grounds upon which respondent complains are reviewable only by a direct proceeding by certiorari, and the complaint was prop-

erly dismissed at the Special Term. (Cooley on Taxn. [1st ed.] 533; *Guest* v. *City of Brooklyn*, 69 N. Y. 506; *Kennedy* v. *City of Troy*, 77 N. Y. 493; *In re Cruger*, 84 N. Y. 621; *Hoffeld* v. *City of Buffalo*, 130 N. Y. 392; *Lyon* v. *City of Brooklyn*, 28 Barb. 609; *In re Sackett, etc., Streets*, 74 N. Y. 107; *In re Mead*, 74 N. Y. 216.)

*John Desmond* for respondent. The order appealed from reversed the judgment for errors of fact. Therefore, if there be any evidence to support plaintiff's claim, this court has no jurisdiction to review the facts or the evidence, except to determine if there be any evidence to support plaintiff's claim. (Code Civ. Pro. §§ 191, 1337, 1338.) The assessors acted dishonestly in assessing plaintiff's property. (*Ellwood* v. *City of Rochester*, 122 N. Y. 229; *Thomas* v. *Gain*, 35 Mich. 154; Cooley on Taxn. [2d ed.] 218, 219, 242; *In re Baird* v. *Bd. of Suprs.*, 138 N. Y. 95; *People ex rel.* v. *Rice*, 135 N. Y. 500; Code Civ. Pro. § 1022; *Becker* v. *Koch*, 104 N. Y. 404.) Plaintiff sought to show by what rule, if any, the state Erie canal lands were assessed. The evidence was excluded and plaintiff excepted. This was error. One of the assessors had already testified that he assessed the frontages of lots according to grades. He certainly could not have done so as to the property of the state, and if he did not, then he adopted two rules and the assessment is void. (*Ellwood* v. *City of Rochester*, 122 N. Y. 229; *Thomas* v. *Gain*, 35 Mich. 154; L. 1880, ch. 14, § 82; *Ten Eyck* v. *Witbeck*, 135 N. Y. 40; *Hassan* v. *City of Rochester*, 67 N. Y. 528; Cooley on Taxn. [2d ed.] 207, 652; *Louisville* v. *Navin*, 10 Bush. 549; *Lima* v. *C. Assn.*, 42 Ohio St. 128; *Moore* v. *City of Albany*, 98 N. Y. 409.) The assessment was, in fact, made upon the frontages of the lots, and without reference to the buildings thereon. The resolution ordering the assessment directed the same to be made on the "lots and parcels of land," as provided in section 214 of the charter instead of directing it to be made on the "houses and lands," as provided by section 215 of the charter. This omission was held immaterial by the learned

trial justice. That " houses and lands " and " lots and parcels of land " were synonymous terms. While, in a general sense, this may be true, it is submitted that, for the purpose of this assessment, it is incorrect. (*Clark* v. *Vil. of Dunkirk*, 12 Hun, 182; 75 N. Y. 612; *Kennedy* v. *City of Troy*, 77 N. Y. 494; *Sanders* v. *Downs*, 141 N. Y. 422.) The assessment is illegal and void for the reason that the assessors who made the assessment were interested in the property assessed. (L. 1880, ch. 14, §§ 180–196; *Fallon* v. *Lawler*, 102 N. Y. 228; *Frear* v. *Sweet*, 118 N. Y. 454.) No oath was attached to the roll. (*Stebbins* v. *Kay*, 123 N. Y. 31; *Merritt* v. *Vil. of Portchester*, 71 N. Y. 309; *M. L. Ins. Co.* v. *Mayor, etc.*, 61 N. Y. S. R. 250.) The assessment is void for the reason that the value of plaintiff's property does not appear on the roll, nor the value of any city property, nor the value of any church property. (*Sanders* v. *Downs*, 141 N. Y. 426; *Merritt* v. *Vil. of Portchester*, 71 N. Y. 309; *Stebbins* v. *Kay*, 123 N. Y. 31; *Newell* v. *Wheeler*, 48 N. Y. 486.) Plaintiff is entitled to judgment because the certificate of sale provided by sections 104 and 108 of the charter is presumptive evidence of the regularity of the assessment, and this is so whether or not the defects complained of appear upon the face of the roll. (*Scott* v. *Onderdonk*, 14 N. Y. 9; *Hatch* v. *City of Buffalo*, 38 N. Y. 276; *Allen* v. *City of Buffalo*, 39 N. Y. 386; *Hassen* v. *City of Rochester*, 65 N. Y. 516.) Section 108 of the charter provides that where the expense of an improvement shall exceed $10,000 the common council may determine that the taxpayers may pay their assessment in not more than five equal payments. The common council in this case did determine that the taxpayers might pay their assessment in five equal payments. This determination was disregarded in ordering this assessment by the common council and making it by the city assessors. (*Hassan* v. *City of Rochester*, 67 N. Y. 528.) Although one of the assessors was called as a witness by plaintiff, yet the court is not bound to accept what he may testify to as true nor is the plaintiff estopped by what he says. (*Becker* v. *Koch*, 104 N. Y. 402.) The application of a dif-

ferent rule than had been applied to any other property renders the assessment void. (*Ellwood* v. *City of Rochester*, 122 N. Y. 229; *Haviland* v. *City of Columbus*, 50 Ohio St. 471.) It is urged by the counsel for the defendants that plaintiff cannot maintain this action for the reason that section 215 of the city charter provides that any assessment authorized by the charter is declared valid and effectual notwithstanding irregularities, omissions or errors in any of the proceedings relating to the same, and that·this provision covers all the errors and defects complained of. This is untenable. (*Hassen* v. *City of Rochester*, 65 N. Y. 520; *Stebbins* v. *Kay*, 123 N. Y. 31; *Sanders* v. *Downs*, 141 N. Y. 422; *Merritt* v. *Vil. of Portchester*, 71 N. Y. 309.)· The objection made by the defendants against the right to maintain this action, that none of the defects are jurisdictional and that because the common council and assessors published the notices required by the charter before confirming this roll, the plaintiff is now estopped from making any claim by reason of said defects, is untenable. (*Sanders* v. *Downs*, 141 N. Y. 422; Cooley on Taxn. 302; *Hassan* v. *City of Rochester*, 67 N. Y. 537; *People ex rel.* v. *Wilson*, 119 N. Y. 515; *Stebbins* v. *Kay*, 123 N. Y. 31; *Merritt* v. *Vil. of Portchester*, 71 N. Y. 309; *Newell* v. *Wheeler*, 48 N. Y. 486; *In re City of Rochester*, 31 N. Y. S. R. 75, 78.) The claim of the defendant's counsel that plaintiff's only remedy in this case is certiorari is clearly untenable. The granting of a writ of certiorari is a discretionary act. (Code Civ. Pro. §§ 1638, 2127; *People ex rel.* v. *Lohnas*, 54 Hun, 609; *In re Flushing Ave.*, 101 N. Y. 678; *Scott* v. *Onderdonk*, 14 N. Y. 9; *Hatch* v. *City of Buffalo*, 38 N. Y. 276; *Allen* v. *City of Buffalo*, 39 N. Y. 386; *Hassen* v. *City of Rochester*, 65 N. Y. 516; *Hassan* v. *City of Rochester*, 67 N. Y. 528.)

Gray, J.  This action was brought to set aside an assessment imposed upon the plaintiff's property for the expense of opening a new street, in the city of Rochester, and to obtain an injunction restraining the collection of the assessment.

It appears that, in 1881, the common council of the city adopted an ordinance for the opening of what is known as Church street. The ordinance designated, as the portions of the city deemed to be benefited and proper to be assessed for the whole expense of the opening of the street, " the entire First ward ; also all that portion of the Second ward bounded," etc. After the assessment was completed, Ellwood, one of the persons assessed, commenced an action against the city to set it aside. The result of the action was favorable to him and the judgment, which vacated the assessment upon his property, was affirmed by this court. (122 N. Y. 229.) The ground, upon which the affirmance here was placed, was that there had been a failure on the part of the commissioners of assessment to comply with the ordinance and with the requirements of the charter. The commissioners had divided the territory of assessment into two districts ; one of which, they decided, would receive a special benefit from such improvement, while the other would receive only a general benefit. They assessed the district deemed specially benefited by apportioning upon each lot therein a sum according to its feet of frontage, without regard to the value of buildings and improvements, and they assessed the district deemed generally benefited by a general assessment according to percentages on the lots therein. It was held that, in so doing, the commissioners had disregarded the determination of the common council, that all of the lands would be specially benefited and that they had, in effect, by their unauthorized action, contracted the area of special benefits. It was observed in the opinion that, " presumptively, therefore, his," (plaintiff's), " assessment was increased by the determination not to assess for special benefits in the other sub-district." As the final judgment in the Ellwood action did not enjoin the city from making another assessment for the improvement, in 1893, the common council adopted a resolution, under the provisions of section 215 of the city charter, that a reassessment for the improvement should be made. This resolution required the assessors, " to make the

reassessment of the property described in said ordinance," (meaning thereby the first ordinance), "for the opening of said street, as nearly as may be to the advantage which said lots and parcels of land within the territory directed to be reassessed shall be deemed to receive by the making of said improvement," etc.  The new assessment roll having been prepared and confirmed by the common council, thereafter, the present action was commenced and, in its complaint, the plaintiff alleges various grounds as entitling it to a judgment declaring the assessment void and enjoining the proceedings to collect it.  At the Special Term of the Supreme Court, judgment went for the defendants and the complaint was dismissed; the learned trial judge holding, in his decision, that "the alleged defects in the assessment roll are such irregularities or omissions as do not invalidate it" and, that, although the assessment against the plaintiff's property is largely excessive, yet that the assessors had proceeded upon a proper rule and any error in that respect was one of discretion which could not be corrected in this action.  Upon appeal to the General Term, the judgment of the Special Term was reversed; the order of reversal being for errors of fact as well as for errors of law.

We are satisfied with the disposition which was made by the trial court of all the various objections made by the plaintiff to the assessment proceedings, except as to the one which related to the rule, or principle, adopted by the assessors in making their assessment.  The reasons, stated in the opinion delivered by the learned trial judge, for overruling the various objections, except the one referred to, are perfectly satisfactory to us; as they were to the General Term.  By reference to the opinion delivered there, it will appear that it was thought that the relatively unjust and unequal assessment of the plaintiff's property must have resulted, not from an error of judgment, but because improper considerations had influenced the minds of the assessors and had caused them to adopt some erroneous rule.  In the discussion upon that point, the conclusions of the General Term rest upon what they

73

observed to be the flagrant inequality in the assessment, when properties, similarly situated with and in the immediate neighborhood of the plaintiff's, were compared as to amounts of assessments. The instances are referred to in the evidence where certain of these properties, which adjoined the plaintiff's on either side and had a greater frontage and depth and a concededly greater value, were assessed to the extent of about half, and less than half, of the amount, at which the plaintiff was assessed. While we think the reversal of the Special Term judgment was proper, we are not able to concur in the reasoning of the opinion at the General Term and, therefore, deem it necessary to state the grounds upon which we place our affirmance of the order of reversal.

That this assessment was highly unjust, the evidence shows ; but the reasoning of that opinion is hardly sufficient to take the case out of the rule of law, which forbids a party to dispute, by a collateral attack, the correctness of an assessment, where mere irregularities, or errors of a formal nature, have been committed, or where the ground of complaint is in the excess of the amount of the assessment over his due proportion. The remedy, in such a case, is by certiorari to review the proceedings objected to. Apparently, the learned General Term justices were of the opinion that where the evidence shows such an inequality in the assessment as to make it appear, relatively, grossly unjust, inferences are permissible that the municipal officers had adopted some erroneous principle, which resulted in the great injustice to the complainant and which justified the intervention of the court, when appealed to, through an action to vacate the assessment. Such inferences, however, must arise in other facts than those showing a merely grossly unequal assessment. It must appear that, in the methods pursued in making the assessment, the inequality was, or may have been, due to some erroneous rule or principle. The facts should show that the municipal officers had transgressed their jurisdiction and that, in making the assessment, they had failed to comply with and had, in fact, disregarded the ordinance or resolution from which

they derived their sole authority to act.   We think those facts do appear clearly enough, in this record, to enable us to find support for the order of reversal below and we shall, as briefly as possible, hereafter, point them out.

Preliminarily it may be remarked, with reference to such an action as this, which collaterally attacks the assessment, that it comes under that head of equity which awards relief when the object is to remove a cloud from the title.   Judge FOLGER, in *Marsh* v. *City of Brooklyn* (59 N. Y. 281), stated the conditions, which entitled the party to invoke the aid of a court of equity, to be, "when the claim or lien purports to affect real estate and appears on its face to be valid; when the defect in it can be made to appear, only, by extrinsic evidence, which will not necessarily appear in proceedings by the claimant thereof to enforce the lien."   This rule, often stated in this court since the case of *Scott* v. *Onderdonk*, (14 N. Y. 1), and carefully reviewed in *Guest* v. *City of Brooklyn*, (69 N. Y. 506), is well established.   The rule is applicable to such a case as this; but the extrinsic evidence, resorted to in aid of the action, must show the defect relied upon to be one affecting the jurisdiction of the municipal officers and, hence, invalidating the claim to hold the plaintiff's property for the amount of the assessment imposed upon it.   In *Hoffeld* v. *City of Buffalo*, (130 N. Y. 387), an action of similar character, BRADLEY, J., observed that, " While the excess may be so greatly out of proportion as to permit the inference of corrupt purpose or of adoption of an erroneous rule of estimate, the matter of excess is one of degree only ; and if in one case an assessment, having the support of jurisdiction of the assessors and of presumption of regularity, may, upon the evidence of witnesses to the effect that it was disproportionately made upon the lands, be vacated in a collateral action, the question would be an open one in every case where some one or more of the persons whose lands are subjected to assessment deem themselves aggrieved for such cause."   What is essential to the maintenance of the action is that the assessment was illegal and that the illegality can only be made to appear by extrinsic

evidence. If the municipal officers have acted within their jurisdiction in making the assessment complained of, that the evidence makes it appear to be disproportionate does not prove, necessarily, that an erroneous rule was adopted.

Referring to the evidence in this record, we find that, whereas the ordinance of the common council described, as the portion of the city which was deemed benefited and proper to be assessed for the whole expense of the improvement, the entire first ward and all of a certain described portion of the second ward and required that the reassessment to pay for the improvement should be made by the assessors upon the property described, the facts disclose that the assessors allowed themselves a latitude of authority in excess of that conferred and undertook to make exemptions with respect to the properties within the territory of assessment.

One of the assessors, being examined as a witness, testified as to the instances, in which they had made such exceptions and had applied a different rule from what they had applied to the rest of the district. It seems that they divided the territory of assessment into seven grades; the property placed in each grade varying from $40.00 per foot of frontage, down to $1.25. They estimated that they had about 30,000 feet of frontage to assess, for the purpose of raising the $185,000 required by the ordinance, and, admitting that they could adopt this method of assessment of subdividing the territory into districts, graded for assessment at certain figures per foot of frontage for each district, it is clear that the rule should be consistently applied and that there should not be two rules of apportionment of the same assessment in the same district; for that would result in mere arbitrary official action. If, after having subdivided the territory of assessment into districts which, being assessed at a certain rate per foot of frontage, would produce the whole amount required to be raised, the assessors diminished the amount of the frontage on some of the property, in one or more of the sub-districts, upon which the assessment must be levied according to their method, or if properties devoted to particular usage, as, for instance

in this case, church properties, receive partial exemption, this injustice would result, that the amount of the assessment must be increased upon some other property in the general territory, beyond what would be its due and just proportion. An assessment made under such conditions cannot be said to be governed by a rule uniform as to all the property within the benefited district and must be condemned as illegal. Nor was it within the letter, or the spirit, of the ordinance, under which the assessors derived their authority to act. The witness, Munn, in his testimony, told of the instances where they had exempted properties from the assessment, which would have been imposed, had the rule based upon the feet of frontage been observed in their case. His explanation was that, having estimated that a piece of property was benefited to a certain extent, if the figures of the frontage, according to the grade in which the property found itself, would make up a larger sum than that which was represented by their estimate, they would reduce the number of feet for the purposes of the assessment. He, also, testified that, in some cases, the frontage of a piece of property would be increased for assessment purposes; so that the amount of the assessment might be brought up to equal the figure at which they estimated the benefit received by the property. Several of the cases, where there had been exemptions of frontages in the levying of the assessment, were of properties benefited by new frontages upon Church street itself, and there were cases where the fact of the property being used for a church was regarded as entitling it to an exemption.

The facts in the record show that, even according to the method adopted by these assessors, there was no uniform rule of practice, which would have imposed upon each piece of property its due and proportionate share of the assessment. It may be true that all the property in the territory was, in a sense, assessed; but the legal error, which affected and vitiated the assessment, was the failure to apply a uniform rule in assessing the property, thus graded into districts. It is not only presumable, but very certain, if all the property within

the territory of assessment had been, in fact, assessed per foot of frontage, according to the plan adopted, that the assessment upon the plaintiff's property would not have been so grossly excessive, relatively to other properties similarly situated. ·Furthermore, we find no authority for the assessors to make any distinction with respect to the uses of the properties coming under assessment. The commercial benefits must accrue equally to all properties similarly situated.

Not only have these considerations led us to the conclusion that the assessment was illegally made; but inferences from the facts are irresistible that no just apportionment of the burden of this tax was made by the assessors; such as· would have resulted from the application of some one uniform rule which, bearing alike upon all, and having reference to the buildings upon the land and the benefits received ·by the municipal improvement, produces equality. ·The plaintiff's court house block would not. have been assessed at $16,000, while the adjoining larger blocks, with their great commercial buildings, were assessed at about half that amount, if such a rule had guided the exercise of the assessors' discretion.

The plaintiff was justified in coming into a court of equity; there to show the illegal nature of the assessment by extrinsic evidence, and we think that the order appealed from should be affirmed.

Judgment absolute should be rendered in favor of the plaintiff, upon the stipulation of the defendants, with costs.

All concur.

Order affirmed and judgment accordingly.