(49 App. Div. 232.)

In re MUNN.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

1. MUNICIPAL CORPORATIONS—TAXATION.

    Laws 1895, c. 613, amending Consolidation Act, § 903, which provides
    that, in case the principle of apportionment of an assessment for public
    improvements be erroneous, the court shall reduce the assessment in the
    lots of the aggrieved party to the lawful amount, was in force until Janu-
    ary 1, 1898. Greater New York Charter, § 1614, which went into effect on
    that date, provides that all rights existing on that date should not be lost
    or impaired or affected by its provisions. *Held* that, where the confirma-
    tion of an assessment was made prior to January 1, 1898, the rights exist-
    ing thereunder were to be governed by the former act.

2. SAME—UNEQUAL ASSESSMENT.

    Consolidation Act, § 878, requires that the amount of assessment for
    sewers shall be apportioned among the owners and occupants of houses
    "in proportion as nearly as may be to the advantage which each shall be
    deemed to acquire." Petitioner's property was assessed for a sewer im-
    provement at a sum nearly nine times greater than owners of adjoining
    property similarly situated and more valuable. *Held* that, where the record
    on an appeal from such assessment failed to show good reasons for the dis-
    crimination, a rehearing would be granted, in order that more satisfactory
    evidence may be given justifying the action of the assessors.

Appeal from special term, New York county.

Application by Orson D. Munn to vacate an assessment for sewer
construction made by the city of New York. From an order grant-
ing the application, the city appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGH-
LIN, PATTERSON, and O'BRIEN, JJ.

George L. Sterling, for appellant.
Henry De Forest Baldwin, for respondent.

O'BRIEN, J. The petitioner moved to set aside and annul an assessment for $2,236.71 for a sewer, as levied and confirmed on December 15, 1897, against his premises at 31 and 33 Broadway, and for a reapportionment and reduction thereof, on the ground that substantial error had been committed by the board of assessors. The petitioner's affidavit states that the sewer was constructed along Morris street to Broadway, and thence north, along Broadway, to his northerly boundary line; that his premises have a frontage on Broadway of about 41 feet, and an area of about 4,900 square feet, and his building is a five-story structure; that the property adjoining his on the south has a frontage of 29 feet on Broadway, and a frontage of 184 feet on Morris street, an area of 9,400 square feet, and an office building thereon of 13 stories, the assessment, however, being only $971.78; that the property on the south side of Morris street, extending 248 feet along the new sewer, was assessed for $1,316.32; that the property on the east side of Broadway, opposite the petitioner's property, was not assessed at all; that while the petitioner is informed and believes that some of the property owners assessed had notice of the proceedings to impose the assessment, and appeared before the board with evidence, he received no notice, and did not appear; that, prior to the construction of the sewer, the petitioner had the right of drainage across the property adjoining his on the south into the old sewer, but this drain was taken up, and the adjoining property thus became free from an incumbrance, and gained, as well, the use of the new sewer, still being assessed less than he was. The total assessment was $4,524.81, of which the petitioner's portion was $2,236.71; he being charged $53.78 per square foot, while the next highest charge was $6.33, and the lowest $2.50.

The respondent contends that the issues here are to be determined in accordance with the provisions of the consolidation act, which was in effect when the assessment was confirmed, and he shows that (section 903):

"In case the principle of apportionment of an assessment be erroneous, the court shall reduce the assessment in the lots of the petitioner aggrieved thereby to the lawful and just amount that ought to have been assessed thereon; or, in its discretion, the court may set aside and annul the entire assessment. * * * and direct the assessment list to be returned to the board of assessors for reapportionment."

The appellant insists that, as this action was begun in 1898, after the Greater New York charter went into effect, its provisions must rule, and therein it is provided that:

"No court shall vacate or reduce any assessment, * * * otherwise than to reduce any such assessment to the extent that the same may be shown by parties complaining thereof to have been increased * * * by reason of fraud or substantial error."

In granting the petitioner's motion, the court below held that the consolidation act was controlling, the confirmation of the assessment having been before the Greater charter went into effect, and that, on the merits, the motion was well founded; no rule of equality as to property similarly circumstanced and benefited having been ob-

served, and the petitioner being charged with nearly one-half the total expenses. We think the judge at special term was right in holding that this proceeding is governed by chapter 613 of the Laws of 1895, amending section 903 of the consolidation act. This act was in force until January 1, 1898, when the charter went into effect. The assessment was confirmed on December 15, 1897, at which time, if erroneous, the petitioner's right to have it corrected came into existence. Section 1614 of the charter provides that this right, like all other rights existing when it went into effect, should not be "lost or impaired or affected" by reason thereof.

Upon the merits, the assessment shows that, out of the ten lots, six different amounts of assessment per front foot were adopted. There is undoubtedly great inequality, especially in the petitioner's case, in which the amount per front foot is put at nearly nine times as much as in any other case; nor is the reason for this made plain by the record. In the past the petitioner had drained his property through an old sewer in Morris street, by means of pipes running across the property adjoining on the south, No. 29 Broadway. The owner of this lot, however, claiming that the petitioner had but a bare license, gave notice of his intention to revoke it, and requested that the pipes be removed. There was a dispute between the parties as to the right to demand this, the result of which was that the petitioner made application to the city for a new sewer on Broadway. While this was being secured, it would seem, he was allowed to use the old one. From this it is argued that the new sewer was of more benefit to the petitioner than to others, being a practical necessity to him; but it seems unjust to throw substantially the whole burden of the assessment upon him.

The consolidation act (section 878) requires that the amount of the assessment shall be apportioned among the owners and occupants of houses "in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire." The assessors are thus required to consider each particular case upon its own merits, and any purely uniform rule which left this consideration out of account would be illegal. Thus in People v. Jefferson County Court, 55 N. Y. 604, it was held that a uniform apportionment by the acre, instead of according to benefit, is illegal; and in Clark v. Village of Dunkirk, 12 Hun, 182, affirmed in 75 N. Y. 612, it was held illegal to apportion the assessment uniformly among various lots, without regard to their distance from the sewer or the expense of connection therewith. It would certainly be illogical to depart from the rule that each owner should pay an equivalent to that which he himself has received. That is the very foundation principle of assessment proceedings. In County of Monroe v. City of Rochester, 154 N. Y. 570, 49 N. E. 139, cited by the petitioner, it was said that inequality was evidence of illegality; but a close perusal of the opinion seems to show that all that was held was that, in that particular case, it appeared that the distinctions were unfounded and merely arbitrary. Where there is no just reason for distinction between different properties, they should be assessed equally. But the case is distinct authority for the proposition that mere inequality,

standing alone, is not evidence of the adoption of an erroneous principle.

It has recently been decided by the supreme court of the United States in the case of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, that to assess according to the front foot, without regard to the amount of benefit, is unconstitutional, and that the only ground upon which an assessment for benefit can be sustained is that an amount of benefit has been received equal, at least, to the amount of assessment, and to assess at so much per front foot when, as matter of fact, the property was not benefited to that extent, was illegal, resulting in the depriving of a man of his property without due process of law. The assessors, therefore, should not apportion the assessment according to foot measurement, but were bound to fix it in proportion to the amount of advantage received by each piece of property; and the question of the extent to which a particular piece gained benefit was one for the assessors to determine. Allowing, however, the widest discretion to the assessors, it is difficult to see upon what theory or principle they proceeded here. It was not, of course, necessary for them to decide whether or not the petitioner had the right of drainage over the adjoining lot, or whether such right was or was not destroyed, if it ever existed; but still it was their duty to take into consideration all the circumstances regarding the ability of the petitioner to have sewer drainage for his premises, as compared with the greater advantages he derived from the construction of the new sewer.

At first blush it seems unjust to impose the greater part of the cost on the petitioner, when the other properties must have shared in the improvement; nor does it appear that any consistent rule was followed as to such other properties. Thus, with respect to parcel 9, being the Columbia Building, it was assessed at but $4.54 per front foot, though the building itself is the most valuable structure upon the line of the improvement. Parcels 1 and 8 were assessed, one at the rate of $2.50, and the other at the rate of $6.02, per front foot; and parcels 2 and 7, which had much less depth than parcel 8, and were much less improved, were assessed at $6.33 per front foot. So, also, as to properties on the south side of Morris street, which would seem to be equally benefited by the sewer, no uniform rule was adopted; so that the result is that property the most valuably improved received the lowest assessment, while those of the smallest area and with the poorest buildings were assessed the largest amount. As it is for the assessors to fix the assessments according to the benefits received, it is difficult to understand why there should be such discrepancies between properties similarly situated and apparently receiving the same benefits. It may be that good reasons can be shown for these differences upon another hearing; but, as the record comes to us, we think it but right that such new hearing should be had, to the end that more satisfactory evidence may be given justifying the action of the assessors.

Although, upon the merits, therefore, we agree with the conclusion reached by the learned judge at special term, there is another objection made which we think should be removed, as it might

affect the validity of this proceeding. It is alleged in the petition that the assessment list did not state the petitioner's name, or any other, as the owner or occupant of the premises. The petitioner was in fact both owner and occupant. Section 869 of the Consolidation Act, provides that:

The assessors shall "state the names of the owner or owners and occupants; and it shall be their duty to ascertain by inquiry to be made of the deputy commissioners of taxes, and by inquiry of the receiver of taxes, as to such ownership," etc.

The reasonable construction of this is that, if the name or names are known, they shall be stated, and that, in any event, due attempt to learn them shall be made in the manner provided. Here the board took testimony in June, 1897, long before the assessment was confirmed, from which it plainly appeared that the petitioner was the owner of lot 10. It then became the duty of the assessors to insert it, and the well-settled rule is that provisions regulating the method of taxation must be strictly followed. This omission, if not corrected, might invalidate the assessment, at least as to the petitioner.

We think the order appealed from should be affirmed, with costs. All concur.