## William A. Sweet, Respondent, *v.* Edmund Merry, as Survivor, etc., Appellant.

Plaintiff's assignors, being the owners of a portion of a water-power, which had been damaged by the act of the state, assigned to defendant and his partner, who owned another portion of said water-power, their claim for damages, such assignment was absolute on its face, and was upon an agreement by the assignees that they would prosecute the claim before the proper tribunal in connection with their own, and would pay over to the assignors their just and full proportion of any and all sums which might at any time be allowed and paid by the state for or on account of the damages alleged. An award was made in favor of and was paid to the assignees. In an action upon said agreement, *held*, that a recovery was proper for a proportionate share of the damages awarded, deducting therefrom the proper proportion of the expenses incurred; that the transfer was not a gift, or necessarily or naturally an attempt to create a trust, but a valid agreement of sale for a contingent consideration to be paid in the future.

The award, as formally made, was in one gross sum, but referred to other papers for its foundation and details. The question as to what was embraced in the award and for what items of damage it was rendered, was submitted to the jury. *Held*, no error.

It was claimed that plaintiff was not entitled to recover because the appraisers had not jurisdiction to award damages for injuries to the share of the property owned by plaintiff's assignors, and that the amount awarded must be construed to have been entirely for defendants' share. *Held*, untenable; that defendants agreed to pay, if, as a fact, the state paid, not if the state ought to have paid, as matter of law; that the claim was one of which the appraisers had jurisdiction; that if they had erred in their award that would not render it void, but simply erroneous, to be corrected, if at all, on appeal.

(Argued February 29, 1888; decided April 10, 1888.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an an order made January 26, 1886, which affirmed a judgment entered upon a verdict in favor of the plaintiff.

This action was brought originally against Edmund Merry and George G. Breed, copartners, to recover a portion of an award made by the canal appraisers and paid to them by the state under the circumstances hereinafter stated.

By an act of the legislature, passed in 1864, chapter 475, the canal commissioners were authorized to rebuild the dam on the Oswego river, at Phœnix, and the Horseshoe dam on said river, connected with the Oswego canal, with a view of improving the navigation of the canal.

At that time there were two mill properties at the point where the improvements were to be made, which drew water from the dam, then in existence, to propel the machinery in the mills.

The reconstruction was commenced in the year 1864 and completed in 1867. At the time of the commencement of the work, the defendants, Merry & Breed, were the sole owners of one of these mills, a grist-mill.

The other mill and property, known as the Sturges mill, was owned by other parties. On the 14th day of October, 1865, Luman H. Candee and John Gilbert, part owners of the Sturges mill property, entered into an agreement with several persons, including Merry & Breed, to convey to them an undivided one-half part of the property. As between the purchasers, this interest was divided into ten shares, the defendants, Merry & Breed, taking one share; the parties who executed the instrument of transfer, hereinafter set forth, taking eight, and another purchaser the other one. By a deed dated on the 14th day of October, 1865, Candee and Gilbert conveyed the undivided one-half part of the Sturges mill property to the purchasers, one-twentieth part of the entire property being conveyed to Merry & Breed, and eight-twentieths to said parties.

On the 25th day of October, 1865, the purchasers of the eight-twentieths made and delivered to Merry & Breed an instrument in writing, of which the following is a copy :

"For value received, we and each of us sell and convey and assign all our right, title, interest and claim, in and to all damages to property and water-power, against the state of New York, growing out of the building of the Phœnix dam and lowering the heighth thereof. The claim for damages hereby sold and assigned, is upon the property and water-

power at Phœnix, Oswego county, New York, known and designated as the Sturges mill property. This sale and assignment is made to Edmund Merry and George G. Breed, under the firm name and style of Merry & Breed, who are hereby authorized to prosecute said claim against the state of New York, in their own name, and receive and receipt for all moneys awarded on account of said claim.

"Witness our hands and seals, this 23d day of October, 1865."

In consideration of this assignment, Merry & Breed, as plaintiff's testimony tended to show, agreed to present claims for the damages sustained to the nine-twentieths, prosecute them, and pay over to the assignees eight-ninths of the sum awarded, less a proportionate share of the expense incurred. After the completion of the work, and, in April, 1868, the legislature passed an act (Chap. 340) for the relief of said Merry and others, authorizing the canal appraisers to hear and determine the claims of these parties for damages alleged to have been sustained by them in the years 1864, 1865 and 1866 in rebuilding the dam on the Oswego river at Phœnix, by reason of any appropriation by the state, of the lands of the persons hereinbefore mentioned, or either of them, the removal or destruction of any building or other property owned by them, or either of them, by reason of the change of the height of the dam aforesaid, and diverting the water from the mill property of said persons, or either of them, and to award to them, or either of them, such sum or sums as the said appraisers shall deem just and equitable, subject to the appeal to the Canal Board, as in other cases. With a view of complying with the act, Merry & Breed made out and verified and filed with the canal appraisers, a claim for damages, naming the sum of $18,000 as the amount of the damages which they had sustained for the property of which they were the sole owners. And making a claim for nine-twentieths of the damages which had been done to the Sturges mill property, which was itemized, and, in the aggregate, amounting to $8,810. On the 10th day of October, 1872, the canal appraisers made an award of the gross sum of $7,564.96, which was paid to

said claimants. The persons who executed the assignment claimed that, of this sum, $2,800, with interest thereon from the 30th day of May, 1868, was awarded as damages sustained to the Sturges mill property, as set forth in the claim filed by the defendants, and demanded eight-ninths of that amount. The defendants refused to pay any portion of the award.

*M. M. Waters* for appellant. This action being for money received by the defendants under an alleged direct and express trust, cannot be maintained as an action at law unless the plaintiff establishes, that he has the right to the money; that it is the defendants' duty to pay the money to the plaintiff, and the amount of the money to which said right and duty attaches. (*Eddy* v. *Smith*, 13 Wend. 488; *Marvin* v. *Brooks*, 94 N. Y. 71; *Rathbone* v. *Stocking*, 2 Barb. 135.) As the plaintiff makes title to the money in question through the award alone (and without proving or attempting to prove any of the facts upon which the award is based as original facts in this case), the award is conclusive evidence as to all the questions determined by it within the jurisdiction of the appraisers, and is "for temporary injury to the real estate of defendants." (Laws of 1868, chap. 340; *Candee* v. *Lord*, 2 Com. 268; *Pray* v. *Hegeman*, 98 N. Y. 351; *Chapman* v. *City of Brooklyn*, 40 id. 372.) As the statute which conferred the jurisdiction upon the appraisers limited that jurisdiction to the defendants, as the persons, and to their property injured as the property to be the sole subject of compensation, the award is an absolute nullity for any amount in excess of the compensation for injury to the estate of Merry & Breed. (*Risley* v. *Phœnix B'k of N. Y.*, 83 N. Y. 318, 337.) If the award included anything beyond the compensation to defendants for injury to their estate, to that extent it was void, and any money paid over to defendants by the state officers under the void part of the award was unlawfully paid to and received by the defendants, and they received and held the excess in trust for the state, and the state still retains the right to the money. (*Ross* v. *Supervisors of Cayuga Co.*, 38

Hun 20; *Horn* v. *Town of New Lots,* 83 N. Y. 104; *Risley* v. *Phœnix B'k of N. Y.,* id. 318.) The agreement was illegal in all its parts, as the first step in the agreement was a step in a fraudulent scheme to improperly obtain money from the state through an unlawful award, and as this action is an enforcement of that illegal trust and undertaking, it cannot be maintained. (*Woodworth* v. *Benuette,* 43 N. Y. 273; *Clements* v. *Yturria,* 81 id. 285.) The trust agreement set forth in the complaint, was absolutely void under the statute. 11 R. S. 135, §§ 6, 7.) It could not be attached by parol to an absolute deed. (*Sturdevant* v. *Sturdevant,* 20 N. Y. 39; *Cook* v. *Barr,* 44 id. 156; *Wheeler* v. *Reynolds,* 66 id. 227; *Hutchins* v. *Hutchins,* 98 id. 56; *Levy* v. *Brush,* 45 id. 589; *Hurst* v. *Harper,* 14 Hun 280; *Hubbard* v. *Sharp,* 11 N. Y. State Rep. 802; *Hathaway* v. *Payne,* 34 N. Y. 92; *B'k of Auburn* v. *Roberts,* 45 Barb. 407; *Danforth* v. *Suydam,* 4 Com. 66; *McCrea* v. *Purmort,* 16 Wend. 473.) The award has no validity except so far as it is authorized by the statute (chap. 340, Laws of 1868), and within the authority conferred by the statute it has all the force and effect of a judgment. *Brown* v. *Mayor, etc.,* 66 N. Y. 385; 83 id. 337; *Candee* v. *Lord,* 2 Com. 268; *Burgess* v. *Simonson,* 45 N. Y. 225; *Carpenter* v. *Osborn,* 102 id. 552.) The award cannot be questioned collaterally until reversed, vacated or set aside in a direct proceeding. *Peyser* v. *Mayor, etc.,* 70 N. Y. 497; *Sherman* v. *Trustees of Clifton Springs,* 27 Hun, 390; *Buffalo* v. *State Line R. R. Co.,* 48 N. Y. 93; *Wilkes* v. *Mayor, etc.,* 79 id. 621; *Bk. of Commonwealth* v. *Mayor, etc.,* 43 id. 184; *Swift* v. *City of Poughkeepsie,* 37 id. 511.) The rules of interpretation and construction of written instruments not having the peculiar characteristics of judgments utterly forbid the interpretation put upon the award by the jury. (*Coyne* v. *Weaver,* 84 N. Y. 387, 390; Addison on Contracts, 295) Plaintiff must sustain his action by proving that he is entitled to the money *ex æquo et bono,* but the validity of the award is conclusive evidence that the fund was plaintiff's money, and the invalidity of the award would be conclusive

evidence that the money was the property of the state, unlaw-
fully obtained, and, therefore, held in trust for the state. The
defendants, therefore, owed plaintiff no duty to pay the money
to the plaintiff. (*People* v. *Mead*, 36 N. Y. 229; *Eddy* v.
*Smith,* 13 Wend. 490.) It was not competent for the plaintiff
to vary or modify the legal effect of the assignment to the
defendants by parol. (*McCrea* v. *Purmort*, 16 Wend. 473.)
Where the law requires the evidence of a transaction to be in
writing, oral evidence cannot be substituted for that so long
as the writing exists and can be produced. (*People* v. *Zeyst*,
23 N. Y. 140, 142, 143.) If the claim assigned to plaintiff
was a valid claim against the state for injury to the property
of the assignors or their vendors, and not within the jurisdic
tion of the Board of Canal Appraisers, under chapter 340 of
the Laws of 1868, the award, or the payment thereof, did not
affect or extinguish that claim against the state, because the
act did not give any jurisdiction over such claim, and conse-
quently did not give the plaintiff's assignors any right to the
money paid. (*Patrick* v. *Metcalf*, 37 N. Y. 332; *Butter-
worth* v. *Gould*, 41 id. 350; *Hathaway* v. *Homer*, 54 id. 655.)
The plaintiff's assignors having no title to the money due from
the state, no duty to pay the same to plaintiff or his assignors
arose from the receipt of the money, and the plaintiff has
no right to the money. (*People* v. *Mead*, 36 N. Y. 224;
*De Peyster* v. *Mali*, 92 id. 262; Laws of 1868, Chap. 340;
*Nellis* v. *Clark*, 20 Wend. 24.) As to what the appraisers
ought to have awarded for defendants' lawful claim, and what
for the unlawful claim, the award was conclusive. (*De Peys-
ter* v. *Mali*, 92 N. Y. 262; *People* v. *Zeyst*, 23 id. 140.)

*Edwin Nottingham* for respondent. The fact that the award
was made in a gross sum to the claimants, and its omission to
specify on which of the two properties it was made, was sup-
plied by the opinion of one of the appraisers, stating that the
award was made on both properties, and the amount awarded
on each. (Laws of 1829, chap. 368, § 2; *Tolman* v. *S. B. &
N. Y. R. Co.*, 92 N. Y. 353; *Snyder* v. *Snyder*, 96 id. 91,

*In re Holbrook,* 99 id. 540.) The determination of the canal appraisers that Merry & Breed, and the plaintiff's assignors, were entitled to present a claim, and receive an award for damages to their interests in the Sturges mill property, is final and conclusive, and cannot be reviewed for any purpose in this action. (1 R. S., chap. 9, tit. 9, art. 3, §§ 46–53; Laws of 1829, chap 368, §§ 1–3, 7; Laws of 1830, chap. 293; Laws of 1836, chap. 287; Laws of 1849, chap. 350, §§ 5–7; Laws of 1855, chap 535, § 4; Laws of 1857, chap. 538; Laws of 1866, chap 836, §§ 5–8; Laws of 1870, chap. 321; Laws of 1868, chap. 579; Laws of 1840, chap. 288, §§ 16–18; Laws of 1841, chap. 280, § 10; Code of Pro., §§ 11, 457; *People* v. *Carrington,* 2 Lans. 368; *In re Com'rs Central Park,* 50 N. Y. 493; *De Peyster* v. *Mali,* 92 id. 268, 269; *N. Y. Ins. Co.* v. *Roulet,* 24 Wend. 505; *Comegys* v. *Vasse,* 1 Pet. 193; *Frevall* v. *Bache,* 14 id. 95; *Danforth* v. *Suydam,* 4 N. Y. 66; *Bank of Auburn* v. *Roberts,* 44 id. 193; *Pelton* v. *Westchester F. Ins. Co.,* 77 N. Y. 605.) The state, by the payment of the award, admitted and conceded its validity, and also the existence of every fact upon which its validity depended; and being valid as to the state, it was valid as between the parties to whom it was made. (*Freeman* v. *Auld,* 44 N. Y. 50; *Kinsman* v. *Parkhurst,* 18 How. [U. S.] 292; *Hartley* v. *Harrison,* 24 N. Y. 170; *Freedman* v. *Brewster,* 26 Hun, 236; *Dezell* v. *Odell,* 3 Hill, 216.) The plaintiff's assignors had, in fact, a just and equitable claim against the state for damages to their interest in the Sturges mill property, notwithstanding the failure to name them in the relief act of 1868. The award was made on that claim, and hence was not a gratuity. (*Munsell* v. *Lewis,* 2 Denio, 224; *Danforth* v. *Suydam,* 4 N. Y. 66; *Bank of Auburn* v. *Roberts,* 45 Barb. 430, 431; 44 N. Y. 193; *Allen* v. *Aguerre,* 7 id. 543.) The justness and equity of the Sturges mill claim must be assailed, therefore, if at all, for a want of title in Merry & Breed and plaintiff's assignors, or because there was no injury followed by damage. (*Young* v. *Gray,* 87 N. Y. 458; *Demarest* v. *Ray,*

29 Barb. 563; *Heath* v. *Ross*, 12 Johns. 140; *Moore* v. *Burrows*, 34 Barb. 173; *Hathaway* v. *Payne*, 34 N. Y. 92; *Wood* v. *Chapin*, 13 id. 509; *Judd* v. *Seekins*, 62 id. 266.) Neither the claim nor the award was apportionable between the grantors and the grantees of the nine-twentieths interest in the Sturges mill property, but only among the grantees who acquired the whole claim. (*Zule* v. *Zule*, 24 Wend. 76; *Marshall* v. *Mosely*, 21 N. Y. 280; *N. Y. C. R. R. Co.* v. *S. & S. R. R. Co.*, 39 Barb. 290; *Hyatt* v. *Allen*, 56 N. Y. 554; *Boardman* v. *Lake S. & Mich. S. R. Co.*, 84 id. 157; 91 id. 484; *Manning* v. *Quicksilver Mining Co.*, 24 Hun, 361.) At any time after the injuries commenced and damages commenced to accrue, the claim for the whole damage, both that which had accrued and was to accrue thereafter, although it had not become payable, was assignable, and the fact that the law providing means for the allowance and payment of the claim had not been passed at the time of the assignment, did not prevent it from taking effect as to the whole claim. (*Munsell* v. *Lewis*, 2 Den. 224; *Comegys* v. *Vasse*, 1 Pet. 193; *Bouch* v. *Dalepaine*, 2 N. Y. 397; *Klock* v. *Buell*, 56 Barb. 398; *Field* v. *Mayor, etc.*, 6 N. Y. 179; 90 id. 387; *Chapin* v. *Dobson*, 78 N. Y. 74; *Henderson* v. *Fullerton*, 54 How. Pr. 422; *Adams* v. *Hull*, 2 Den. 307; *Allen* v. *Brown*, 44 N. Y. 229; *Sherman* v. *Elder*, 24 id. 381; *Thomas* v. *Hubbell*, 35 id. 120; *Bolen* v. *Crosby*, 49 id. 183; *Spears* v. *Mayor, etc.*, 87 id. 360; *Waldrum* v. *Willard*, 17 id. 467.) The agreement between Merry & Breed and plaintiff's assignors, in reference to the prosecution of the Sturges mill claim was not illegal, and even if it was illegal the sustaining of this action does not require the enforcement of any unexecuted provision of an illegal agreement. (*Sedgwick* v. *Stanton*, 14 N. Y. 289; *Hendrickson* v. *Bender*, 5 Weekly Dig. 466; *Russell* v. *Burton*, 66 Barb. 540; *Southard* v. *Boyd*, 51 N. Y. 177; *Lawson* v. *Bachman*, 81 id. 616; *Merrit* v. *Milard*, 4 Keyes, 208; *Hamilton* v. *Kane*, 2 Hall, 526; *Farmer* v. *Russell*, 1 B. & P. 296; *Tenant* v. *Elliott*, 1 id. 3; *McBlair* v. *Gibbes*, 17 How. [U. S.] 232; *Kinsman* v.

*Parkhurst*, 18 id. 289.) Although it may be conceded that plaintiff's assignors had no claim against the state, and that the award made was a mere gratuity, still plaintiff is entitled to recover as for money had and received by Merry & Breed to the use of his assignors. (*Munsell* v. *Lewis*, 4 Hill, 642 ; 2 Den. 224 ; *Stover* v. *Eycleshimer*, 3 Keyes, 620 ; *Carver* v. *Creque*, 48 N. Y. 385.) The sum awarded by the appraisers on the Sturges mill claim was for damages to the interest of plaintiff's assignors in that property, and nothing was awarded for damages to any interest which McKoon had owned in the property and hence the reservation in the McKoon deed has no force or materiality in this action. (*Patrick* v. *Metcalf*, 37 N. Y. 332 ; *Butterworth* v. *Gould*, 41 id. 350 ; *Hathaway* v. *Cincinnatus*, 62 id. 435.) As the award is ambiguous, especially with reference to the items of the claim on which it was made, or as to the property and the amount awarded to each, if both properties, on which it was made, it was competent and proper to show, by parol evidence, what was included in the award, on what property it was made, and the amount awarded on each if on both properties. (*Doty* v. *Brown*, 4 N. Y. 75 ; *Morris* v. *Osborne*, 64 Barb. 543 ; *Dunickel* v. *Wiles*, 11 N. Y. 420 ; *McKnight* v. *Devlin*. 52 id. 399.)

Finch, J. A correct construction of the agreement sought to be enforced in this action will furnish an answer to the principal objections urged to defeat the recovery. The assignors of the plaintiff owned eight-twentieths of what is called the Sturges mill property, and the defendants one-twentieth. The water-power had been damaged by the act of the state, and efforts were in progress to recover such damages. As well to simplify the proceedings as for other reasons, the plaintiff's assignors sold and assigned to the defendants, by a written transfer, absolute on its face, their claims for damages to the mill property which were, of course, commensurate with their ownership, and were eight-twentieths of the whole loss sustained by the injury to that mill and water-power. The

defendants thereby became the absolute owners of nine-twentieths of the damage suffered by the property. This transfer was certainly not a gift, for, although the complaint speaks of it as made "wholly without consideration," the evident meaning is that no present consideration was paid at the date of the transfer, for it is explicitly alleged that the assignment was made at the request of the defendants, and upon an agreement by the latter that they would prosecute the claim before the proper tribunals in connection with their own, and upon receiving an award would pay over to the assignors their just and full proportion of any and all sums which might, at any time, be allowed by the board of appraisers, and paid by the state for or on account of the injuries and damages to the Sturges mill property. It was not necessarily or naturally an attempt to create a trust. It was an agreement of sale for a contingent consideration to be paid in the future. Whatever question there may have been as to the existence of this contract as a matter of fact is settled for us by the verdict of the jury. The benefit to the defendants of this bargain and the motive for making it are apparent. To recover from the state their own one-twentieth of the damages sustained by the mill property would cost them in the expenses of the litigation just as much as to recover nine-twentieths. By their purchase they threw upon the assignors, and so saved to themselves, eight-twentieths of that proportion of the expenses chargeable to the saw-mill property. There was thus value to them in the bargain over and above the purchase-price which they had agreed to pay.

They did recover for nine-twentieths of the damage to the Sturges mill, and the award has been paid them by the state. The contingency has happened upon which, they became liable to pay to their vendors the purchase-price, and which has fixed and determined the amount of that price. The question of what was embraced in the award, and for what items of damage it was rendered, was also submitted to the jury. That was a proper inquiry. The award, as formally made, was in one gross sum, but making reference to other

papers for its foundation and details. Those papers were somewhat informal and open to possible ambiguity of construction, and evidence was given tending to remove those difficulties. It was not an effort to change or contradict the award, but to show what, in fact, was embraced in it, and that, relatively to the. Sturges mill, it covered and gave to the defendants, not only the one-twentieth of the damages belonging to them as owners of the land, but also the eight-twentieths which were theirs by purchase. The evidence given established that fact and put it beyond any reasonable doubt. So that under their contract they became liable for the purchase-money which they had agreed to pay, and which was the consideration of the assignment. It is now said that they ought not to have recovered for the eight-twentieths, since the appraisers had no jurisdiction of that part of the claim, and to save their judicial consistency and the sacredness of the judgment, it must be construed to have been wholly awarded to the defendants for their one-twentieth. But it was not so awarded; and passing by the peculiar character of the claim now made, it is . enough to say that it cannot succeed for two reasons. The defendants agreed to pay if the state paid, as a fact; not if the state ought to have paid as matter of law or morality. No such contingency or reservation was thought of or embraced within the terms of the agreement, and the precise thing has happened which was the object of both parties, and through the effort and action of the defendants themselves, and it is with an ill grace that in order to keep all that they have won they see fit to allege that they ought not to have won it.

They seek, however, to give to the position some strength, and to infuse into it some merit, by suggesting that what they have received may be recovered back by the state, because the award is without jurisdiction. Whatever of possibility there ever was of that result has disappeared with the lapse of time; but there never was adequate foundation for the suggestion. The appraisers did have jurisdiction both of the parties and the subject-matter. The special statute authorized them to hear the claims of the defendants who were named for damages

"alleged to have been sustained by them," by reason of among other things, "diverting the water from the mill property of said persons, or either of them," and, also, "by reason of changing the location and height of the state dam." The authority was to hear and determine the claims, the causes of action, which the persons named alleged they had growing out of the acts of the state, which were specified. The defendants presented their claims. They were owners of an interest in the Sturges mill ; and so, at least, had a right to be heard, and the appraisers had jurisdiction to hear and determine. Merry & Breed in their claim, as filed, insisted, as they had a right to insist, that they were entitled to recover not only the one-twentieth of the damages to the saw mill, but also the eight-twentieths which they owned by purchase. That was a question for the appraisers to decide; not of jurisdiction, for jurisdiction they had ; but of the amount of damages which Merry & Breed could lawfully claim. The appraisers awarded the damages asked. I think their decision was correct, and within the fair and reasonable construction of the act. But, if otherwise, the case is not altered. If the tribunal erred, the error did not make their award void. It was simply erroneous and to be corrected, if at all, on appeal. In *Hunt* v. *Hunt* (72 N. Y. 229), it was said : " Jurisdiction of the subject-matter is power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case arising or which is claimed to have arisen under that general question." And how far we have gone in sustaining a jurisdiction in spite of a judicial error in the determination of facts upon which the jurisdiction depended, will be quite apparent to any one who studies carefully the case of *Roderigas* v. *East River Savings Institution* (63 N. Y. 460). Concededly Merry & Breed were entitled to recover some damages for the injury to the saw mill. If they claimed too much, that did not oust the jurisdiction ; if they were awarded too much that was an error to be corrected on appeal. For all the damages claimed were within a possible and reasonable construction of the act, and if

the construction was erroneous it was, nevertheless, within the jurisdiction, and to be remedied by an appeal.

Of course, in this view of the case, there is no question of trust, or of transforming an absolute assignment into something different, or of an illegal contract. The defendants are simply compelled to do as they agreed. Other questions have been examined, but we think need not be discussed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.