In the Matter of the Consolidated Appeals of THERON KLOCK and Others from the Apportionment of the Assessment for Madison and Sconondoa Streets Sewers, in Oneida, N. Y.

THERON KLOCK and Others, Appellants; JASON T. WALLACE and Others, Composing the Board of Sewer Commissioners of the Village of Oneida, N. Y., Respondents.

*Assessment for a sewer — apportionment of the expense in proportion to the benefit — an assessment by foot frontage where some lots are and some are not improved is illegal — omission of property benefited — appeal to the Appellate Division.*

On an appeal from an apportionment and assessment for the expense of constructing a sewer in a village street, not intended to be used for surface drainage, but solely for house waste and for the drainage of cellars, it appeared that the statute authorizing such assessment provided that the expense of the sewer should "be apportioned upon the lands within such area in proportion, as nearly as may be, to the benefit which each lot or parcel will derive therefrom, and the ratio of such benefit shall be established," and that in the report of the commissioners it was stated "that the ratio of such benefit is hereby established at eighty-four and two-tenths ($.842) cents per lineal foot of frontage on each side of said streets," except as to a certain portion of the street, as to which "the ratio of such benefit is established at forty-five and nine-tenths cents per lineal foot for the frontage," it being stated that the last-mentioned portion of the street was a portion of the street through which the sewer did not run, but where one might be constructed in the future, which would empty into the sewer already built.

From such apportionment an appeal, authorized by statute, was taken to the County Court by certain owners of land assessed, on the ground that their assessment was unequal and not in proportion to other assessments for the construction of such sewer, and that the premises fronting upon such property benefited thereby were not assessed in proportion to the benefits upon the land within such area, and according to the benefits derived by each parcel or lot; that certain pieces of property within the area said to be benefited by such improvement had been omitted, in whole or in part, from said assessment; that the appellants' premises were so situated that they could not be drained by the sewer, and that the ratio adopted by the board was unfair, unjust and disproportionate, for the reason that, while a portion of the property on the street was covered by valuable brick business blocks, and other portions by ordinary buildings, or no buildings at all, the same amount per foot frontage had been assessed alike upon improved and unimproved property. These facts were substantially established before the County Court.

*Held*, that an appeal lay from an order or judgment of the County Court to the Appellate Division;

That in order to comply with the requirement that the apportionment should be made "in proportion, as nearly as may be, to the benefit which each lot or parcel will derive therefrom," and that "the ratio of such benefit shall be established," it was necessary that the commissioners should take into consideration the value of the property and the question whether it was vacant or improved, and if improved, the extent and value of such improvements.

*Semble,* that the omission of any portion of the property within the assessment district from assessment invalidated the apportionment.

APPEAL by Theron Klock and others from an order of the County Court of Madison county, entered in the office of the clerk of the county of Madison on the 24th day of January, 1898, affirming the action of the sewer commissioners of the village of Oneida in making an apportionment and assessment for the expense of constructing a sewer in said village, and dismissing the appeals of the appellants herein.

It appears that a sewer was constructed in the village of Oneida pursuant to chapter 375 of the Laws of 1889 and the acts amendatory thereof, and chapter 414 of the Laws of 1897.

The commissioners in their report say : " That said sewer is not intended and cannot be used for surface drainage, but it is intended solely for house waste, and for the drainage of cellars where cellar drainage is necessary in said village, and where the cellars cannot be otherwise drained."

The sewer was laid through Madison and Sconondoa streets in the village of Oneida, and was to be paid for wholly by the property benefited thereby.

The assessment and apportionment to pay the expense of constructing such sewer was made under section 268 of chapter 414 of the Laws of 1897, which reads in part as follows : " If the whole or any part of the expense of constructing a sewer is to be assessed upon the lands benefited, the board of sewer commissioners shall prepare and file in the office of the village clerk a map and plan of the proposed area of local assessment. Such expense shall thereupon be apportioned upon the lands within such area in proportion, as nearly as may be, to the benefit which each lot or parcel will derive therefrom, and the ratio of such benefit shall be established."

A map or plan of the proposed area of assessment was filed by the sewer commissioners, and such sewer commissioners proceeded to make their assessment and apportionment.

It would appear that objections were made to the first apportionment, which was modified, and the report of such modified assessment, which was the final assessment and apportionment made, is a part of the record in this case.

In such record the commissioners report as follows : *Second.* "That such expense be and the same hereby is apportioned upon the lands within said area in proportion as nearly as may be to the benefit which each lot or parcel will derive therefrom, deducting on corner lots fronting on two streets which are assessable for the expense of constructing said sewer all frontage eighty feet or less from the longest side, or front of said corner lots."

*Third.* "That the ratio of such benefit is hereby established at eighty-four and two-tenths ($.842) cents per lineal foot of frontage on each side of said streets, and upon the frontage of each parcel of property on said streets, except that portion of Madison street running northerly from the intersection of Madison and Sconondoa streets to the south line of the lands of the New York Central and Hudson River Railroad Company ; upon said last-mentioned portion of Madison street to the said south line of said railroad company, the ratio of such benefit is established at forty-five and nine-tenths cents per lineal foot for the frontage on each side of that portion of Madison street."

It was stated upon the argument that the portion of Madison street where the ratio was established at forty-five and nine-tenths cents per lineal foot, was a portion of the street through which the sewer did not run, but where one may be constructed in the future, which will empty into the sewer already built.

*Fourth.* "That the ratio of such benefit upon each piece of property fronting upon said streets is hereby established as follows : The name of each person or corporation appearing in the first column, the ratio of benefit appearing in the second column, and the amount of each assessment appearing in the third column, said ratio and *amounts* appearing opposite the names of said persons and corporations respectively."

In each instance the amounts under the column marked ratio of benefit, and under the column marked amounts, is the same, as illustrated by the following, which embrace the assessments made upon the property of the appellants herein :

| Name. | Ratio of benefit. | Amounts. |
| --- | --- | --- |
| Alfred Kenyon ............... ........ .... | $21 80 | $21 80 |
| Pius Sthalberger ....................... | 41 25 | 41 25 |
| Bennett & Klock........... ... .........:. | 101 04 | 101 04 |
| De Forrest Merrill (Merrill estate)........ | 164 19 | 164 19 |
| Laura A. Gregg and Theron Klock ....... | 56 91 | 56 91 |

Sections 269 and 270 of chapter 414 of the Laws of 1897 provide for the taking of appeals from apportionments made under said chapter, to the County Court of the county in which any part of the village is situated, and provides that all appeals from the same apportionment must be consolidated and heard as one appeal; and further provide that "the County Court may affirm or reverse the apportionment. If it be reversed upon the ground that it is erroneous, unequal or inequitable, the court shall, by the order of reversal, appoint three disinterested freeholders of the village as commissioners to make a new apportionment, and no appeal shall be allowed from such order."

Several of the owners of lands assessed appealed from the apportionment and assessment, and their appeals were consolidated. Among the grounds of such appeal were that the assessment was unequal and not in proportion to other assessments for the construction of such sewer, and that the premises fronting upon such property benefited thereby were not assessed in proportion to the benefits upon the lands within such area, and according to the benefits derived by each parcel or lot; that certain pieces of property within the area said to be benefited by such improvement have been omitted in whole or in part from such assessment; and that such appellants will not be benefited by the construction of such sewer, it not being available for their use, because the premises are so situated that they cannot be drained by the sewer; that the ratio adopted by the board is unfair, unjust and disproportionate for the reason that a portion of the street in which the sewer is constructed is a business part of the village of Oneida, covered by valuable brick blocks, which will be greatly benefited by said sewer, while a portion of said sewer goes through a portion of said village where there are only ordinary buildings or no buildings at all, there being many vacant lots; and the same amount for foot frontage is assessed alike upon improved

and unimproved property. The proceeding before the county judge was upon affidavits.

The appellant Merrill in his affidavit states that said sewer " extends through a portion of Madison street, which for a considerable distance is the business part of the village of Oneida, covered by valuable brick blocks, while the balance of said sewer is through a portion occupied only by ordinary dwelling houses, with many vacant lots, being what is known as suburban property, deponent's property being in the latter portion." This statement of the character of the property upon the street is not disputed.

His property consists of about five acres of farming property, with a frontage of 195 feet on Sconondoa street.

The joint affidavits of two others sets forth that no connection can be made between the sewer and another piece of property known as the Gregg malthouse, which is apparently the joint property of Gregg and the appellant Theron Klock, without passing over the lands of third parties. As to the Merrill property it is asserted that it cannot drain into such sewer, for the reason that the bottom of such sewer is higher than the surface of their land; this, however, is contradicted by the engineer in charge of the construction of such sewer, who swears that it is available for the drainage of cellars upon the lands belonging to Merrill, where the bottom of the cellars is four feet below the surface of the street.

*J. D. Senn*, for the appellants.

*Edwin J. Brown*, for the respondents.

HERRICK, J. :

The order or judgment of the County Court herein is appealable.

Section 1357 of the Code of Civil Procedure provides that an appeal may be taken to the Appellate Division of the Supreme Court from an order affecting a substantial right, made by a court of record possessing original jurisdiction, or a judge thereof, in a special proceeding instituted in that court, or before a judge thereof, pursuant to a special statutory provision. The County Court is a court of record possessing original jurisdiction. (Code Civ. Proc. §§ 2, 340.)

The order appealed from affects a substantial right of the appel-

lant, inasmuch as it affirms an apportionment and assessment which constitutes a lien upon his real estate, and under which it may be sold.

That portion of section 270 of chapter 414, Laws of 1897, reading "no appeal shall be allowed from such order" does not affect this appeal The words quoted refer to the last preceding order described in the section, which is an order of reversal; the order appealed from here is an order of affirmance. · Was it properly affirmed?

A statute giving power to charge the property of individuals with the expense of local improvements must be strictly pursued, and any departure, in substance, from the formula prescribed by the statute vitiates the proceedings. (*Newell* v. *Wheeler*, 48 N. Y. 486; *Merritt* v. *Portchester*, 71 id. 309; *Stebbins* v. *Kay*, 123 id. 31.)

The statute under which this assessment was made provides that the apportionment shall be made "in proportion as nearly as may be to the benefit which each lot or parcel will derive therefrom."

There are two methods of apportioning the expense of public improvements — one by assessing it *pro rata* according to the foot frontage, and the other by assessing it upon the property benefited in proportion to the benefit received.

The Legislature has power to direct either method to be pursued, but where either is directed, that method cannot be departed from.

The one method is easy, but, as a rule, arbitrary. The other imposes more labor, but when carried out in an honest and intelligent manner is more just and equitable.

The difference is a real and substantial one.

The foot frontage rule "is the imposition of a tax upon special lands without any reference to benefits conferred upon such lands. As a mode of assessment it is purely arbitrary." (*State* v. *Mayor*, 38 N. J. L. 410.)

Two lots with equal fronts, the one containing double the number of square feet contained in the other, are benefited in different degrees. This rule taxes them alike.

This rule also ignores the value of the land benefited. Two different lots, with the same width of front, may differ greatly in value owing to a difference in location, or other causes, and, hence, be benefited in different degrees. One man owns a piece of land

extending from one street to another. A sewer in one street drains his whole premises. Another sewer is constructed in the other street from which he derives little or no benefit. This rule imposes the same burden upon him that it does upon an adjoining proprietor to whom the new sewer is indispensable. (*Clapp* v. *City of Hartford*, 35 Conn. 66.)

In *O'Reilley* v. *City of Kingston* (114 N. Y. 439, 448) the court said of the foot frontage rule: "It may be the most just and equitable of any that could be adopted." That is true where the property has been platted into lots of equal depth and where all are unimproved, or improved alike, and where all can derive equal advantages from the improvement.

But where one has a lot fronting for 100 feet upon the street, but only 20 feet deep, upon which there is, and with advantage can be, only one dwelling, he is not equally benefited with the owner of the next five lots, each with a frontage upon the same street of 20 feet, with a depth of 100 feet and a dwelling house upon each lot. The one has five times the area of the other, five times as many buildings, but each has the same frontage upon the street.

One man may be able to avail himself of the improvement at once without further expenses; the other may have to go to a large expense in order to avail himself of the improvement.

If it is a sewer, one owner may drain into it directly; another may have to build a long connecting drain. One lot owner may be able to drain into it from his cellar, and on the other side of the street the land may be so high that cellar drainage is impossible.

Many other illustrations might be given, as to general improvements, familiar to every one conversant with street improvements; but what has been said, together with cases hereafter to be referred to in other connections, will suffice.

In *Clark* v. *Village of Dunkirk* (12 Hun, 181) various allegations of illegality in the assessment were made, and the court said that in order to show that such assessment had been made upon erroneous principles, it was only necessary to refer to two or three of the findings of the referee, as follows: ". He finds that some of the property assessed is not benefited at all by the sewer; that some of the land assessed is lower than the bottom of the sewer and cannot be drained into the sewer; that a large portion of the land

assessed cannot be drained into the sewer without a considerable expense and changing the surface of the lots. It also appears that certain of the persons assessed cannot reach the sewer in question for purposes of drainage without crossing lands belonging to others, and that certain lands were assessed at one uniform rate per foot, without regard to the distance they were situated from the sewer or to the expense of making a connection therewith." And the assessment was set aside. That case was affirmed without opinion in 71 New York, 612.

The rule has long been that "in assessing the expenses of street improvements upon the property benefited the general rule is to consider the effect of the improvement upon the market value of the property and to make the assessment in view of that fact without regard to the present use or the purpose of the owner in relation to future enjoyment." (*People ex rel. Howlett* v. *Mayor, etc., of City of Syracuse*, 63 N. Y. 291, and cases cited; *People ex rel. Howlett* v. *Mayor, etc., of City of Syracuse*, 2 Hun, 433.)

That principle makes it necessary that the assessors should take into consideration the value of the property, and it necessarily follows that they must take into consideration the question whether the property is vacant or improved, and, if improved, the extent and value of such improvements.

Public officials charged with the conduct of public improvements and apportioning the expense thereof have been confused as to their powers and duty in the manner of assessing, by reason of seeming departures by the courts from the rule of assessments for benefits above set forth, and from what at first seem to be conflicting decisions of our courts; because it has been held that assessments would not be set aside when made according to the foot frontage, where the statute required that they should be according to the benefits derived, and also where assessors have not taken into consideration the value of the property or the improvements thereon.

These departures from the principles above asserted, and the apparent conflict of decisions, are more apparent than real, and arise very largely from the nature of the proceedings in which such decisions were made, and from some misapprehension as to what was really decided.

Most of the reported cases in recent years have been cases coming

THIRD DEPARTMENT, MAY TERM, 1898. [Vol. 30.

up either under special statutes to review assessments, where only the matters specified in such statutes could be considered, or cases in equity to remove clouds upon title.

It is useless to attempt to review them all; a few of the principal ones must suffice.

A case frequently relied upon as authority for the proposition that it is not error for which an assessment will be set aside, that an assessment has been made according to foot frontage, where the statute requires that it should be for benefits to be derived, is *The Matter of Eager* (46 N. Y. 100).

The proceedings in that case were taken under the provisions of chapter 338 of the Laws of 1858, which provided that application might be made to a judge of the Supreme Court to vacate an assessment for local improvements, " If, in the proceedings relative to any assessment or assessments for local improvements in the city of New York, or in the proceedings to collect the same, any fraud or legal irregularity shall be alleged to have been committed."

Numerous charges of error in the proceedings were alleged; the last was " that the principle upon which the assessment was apportioned is erroneous, it not being imposed on the several lots in proportion to the advantage which each derived from the pavement, but in proportion to the frontage;" and as to that the court said, " We do not think that this is a subject which could be inquired into in this form of proceeding. If an error has been committed in not making an equitable apportionment of the sum assessed among the several property owners, it is an error of judgment on the part of the commissioners, and not a fraud or irregularity in the proceedings."

" The act of 1858 can only be resorted to for the purpose of reviewing such frauds or irregularities."

It will thus be seen that the court did not in any wise intimate that it was a legal or proper method of assessing, but simply that it was a question that could not be inquired into under the statute pursuant to which the proceedings were taken.

The *Case of Cruger* (84 N. Y. 619) was also a proceeding under the same statute as the *Eager* case, as such statute was amended in 1874. (Chap. 312.)

One of the objections made to the assessment was that the " assessors wrongly apportioned the assessment for benefit, since

they made no difference between lots where the grade was raised eighteen feet or more and those where it was raised but a few inches."

The court held that such objection was unavailing, citing the *Eager* case, and saying: "Their" (the assessors) "error of judgment, if it in fact existed, was not an error in the proceedings, and not the subject of our review under the statute."

In both the *Eager* and *Cruger* cases the error was not in the proceedings relative to the assessment, or in the proceeding to collect the assessment, but was in the assessment itself.

It is true that the learned judge, writing the opinion in the *Cruger* case, also said of the action of the assessors: "The conclusion reached by them was a matter of judgment on their part. It was their duty to judge. They had opportunity to examine personally. Elements went to the formation of their conclusions which cannot be placed before us. We cannot say their determination was erroneous, even if it was exposed fully to our review. To criticise the results of their judgment would practically require that we should ourselves try every question of value and of benefit, and that, too, upon evidence different from that before the assessors."

But such remarks were not necessary or relevant to the decision of the case, and were not pertinent even as arguments, for the subject thus discussed was one that the court and the writer of the opinion decided they could not consider under the statute. What was said in the case of *The Colonial City Traction Co.* v. *Kingston R. R. Co.* (154 N. Y. 493, 495) applies forcibly to the remarks just quoted, viz.: "If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the *dicta* of the writer of the opinion and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance. The failure to read the opinions of courts with this fact in mind gives rise to much fruitless litigation."

But this salutary doctrine has been overlooked, and both the *Eager* and *Cruger* cases have been cited as authorities on questions never decided by them.

In the case of *O'Reilley* v. *City of Kingston* (114 N. Y. 439), which was an action brought to set aside an assessment as a cloud upon title, an action entirely different from the proceedings under the statute in the *Eager* and *Cruger* cases, and limited in its scope, as hereinafter seen, one of the allegations was that the apportionment was made according to foot frontage instead of according to benefits received. As to that the court said: "It was the duty of the assessors to determine the benefits derived by the owners of such land as does border on or touch the street improved. In thus determining the benefits the assessors act judicially. They had an opportunity to examine the premises personally, and were thus possessed of information which cannot be brought before a court on review; consequently their judgment upon the question, as to the amount of benefit derived, cannot be here reviewed, unless they acted upon an erroneous principle in making the assessment. It appears that they reached the conclusion that the tax should be apportioned among the owners of the real estate bordering upon the street, according to the number of feet front owned by each individual. This is not necessarily an erroneous principle, if it was their judgment that each owner was benefited in that proportion. On the other hand, it may be the most just and equitable of any that could be adopted," citing the *Eager* and *Cruger* cases as authorities.

The court was apparently misled by the *dicta* in the *Cruger* case.

In the case of *Hoffeld* v. *City of Buffalo* (130 N. Y. 387) it appears that the following concession was made upon the trial: "That the assessors, in finally determining the amount to be assessed for the benefits upon each of the pieces of land assessed, fixed those amounts without regard to the value of the buildings or other improvements upon the respective parcels, for the reason that they determined that the amount of benefits was not affected by the improvements." Thereupon the court said: "It appeared that upon the plaintiff's land, and some other of the lands assessed, there were buildings, and that other lots within the assessment were vacant. The assessors did not fail to consider the improvements on the lands, and, having determined that the amount of benefits was not affected by them, assessed it upon the lots respectively without regard to the value of the buildings. This was not in violation of the rule embraced within the reason given in *Kennedy* v. *City of*

*Troy* (77 N. Y. 493) for decision in *Clark* v. *Village of Dunkirk* (12 Hun, 182; 75 N. Y. 612); and was in harmony with the views of the court upon which *O'Reilley* v. *City of Kingston* (114 N. Y. 439) was determined. The facts so found do not show that the assessors proceeded on a wrong rule of law in making their estimate of the benefits of the lands assessed."

One of the allegations of error in the *Clark* case was, that the assessors did not take into consideration the value of the buildings and improvements upon the land so assessed, but assessed the land exclusive of such improvements. This was passed upon in the Court of Appeals in the case of *Kennedy* v. *City of Troy* (77 N. Y. 493). The Court of Appeals, in speaking of their decision in affirming the case of *Clark*, said : "There the assessors went upon a rule wrong in law. They held that in getting at the value of lands deemed by them to be benefited, and, hence, liable to assessment, the value of the buildings was not to be taken into account. Considering that as an error of law, working injury to the plaintiff, this court held that he could maintain his suit in equity to vacate the assessment." The court thereby upheld the principle that, in apportioning assessments according to benefits, the assessors must take into consideration the value of the property, and, as an element of that value, must consider the value of the improvements made upon it.

The distinction between the cases appears to be this, that, in the *Clark* case, the fact that the lands were improved was not considered in determining the amount of the assessment that was made, while in *Hoffeld* v. *City of Buffalo* the assessors did take into consideration the improvements made, but determined that such improvements made no difference in the benefits derived by the lands assessed.

The *Hoffeld* case also held that, while such assessment was not illegal, it may have been erroneous. But that such error was not the subject of a collateral review by an action in equity.

In making assessments according to area or foot frontage, the value of such property is not an element.

That improvements upon property, and the value of the property as so improved, should be taken into consideration in making assessments for benefits to be derived, seems to be held in the cases of

*Ellwood* v. *City of Rochester* (122 N. Y. 229) and *The County of Monroe* v. *City of Rochester* (154 id. 570).

In the *Ellwood* case the common council by an ordinance designated the portions of the city deemed to be benefited and proper to be assessed for the expense of opening a street. The assessment was set aside upon the ground that there had been a failure upon the part of the commissioners in the assessment to comply with the ordinance and with the requirements of the charter. The commissioners had divided the territory into two districts, one of which they decided would receive a special benefit from such improvement, while the other would only receive a general benefit. The sub-district deemed especially benefited they assessed by apportioning to and upon each lot therein a sum according to the number of feet frontage, without regard to the value of the buildings or improvements thereon; and they assessed the district as being generally benefited by a general assessment according to precentages on the real property therein, taking the valuations from the last assessment roll for general city and county taxes, making changes in values according to their judgment and placing various assessments upon various streets, having reference to their location with respect to the improvement. It was held that in so doing the commissioners had disregarded the determination of the common council, that all the lands would be specially benefited, and that they had by their acts contracted the area of special benefits.

It will be observed that in that case the assessment in one district was made according to the foot frontage, without regard to the value of the property, and in the other district the value of the property was taken into consideration.

In the case of *The County of Monroe* v. *City of Rochester*, various objections to the assessment are reviewed by the court, and the opinion concludes thus: "Not only have these considerations led us to the conclusion that the assessment was illegally made, but inferences from the facts are irresistible that no just apportionment of the burden of this tax was made by the assessors; such as would have resulted from the application of some one uniform rule, which, bearing alike upon all, and having reference to the buildings upon the land and the benefits received by the municipal improvement, produces equality. The plaintiff's court house block would not have

been assessed at $16,000, while the adjoining larger blocks, with their great commercial buildings, were assessed at about half that amount, if such a rule had guided the exercise of the assessors' discretion."

The inference is very plain from this, that the assessors should have taken into consideration the values of the property and of the improvements thereon in determining what apportionment of the assessment should be made upon the different properties.

From these various decisions the impression seems to have arisen that, in making assessments for public improvements, the officers charged with making the apportionment may make them according to area or foot frontage where the statute says it shall be made according to benefits to be derived; or, by determining that the value of the property makes no difference in the benefits to be derived, may impose the same assessment upon the property of little value as upon that of great value, and that such an assessment is a legal one and cannot be disturbed; yet none of the cases have decided that an assessment so made is properly made. The misapprehension comes, as before stated, from not considering the real questions before the courts in the various cases, and the restriction under which the courts were acting from the nature of the proceedings.

In the cases of which the *Eager* and *Cruger* cases are illustrations they were restricted by the terms of the statutes under which the cases were brought, which confined them to frauds and irregularities in the proceedings; in other cases by the limitations of an action in equity to remove a cloud upon title.

Such an action can be maintained "when the claim or lien purports to affect real estate and appears on its face to be valid, when the defect in it can be made to appear only by extrinsic evidence." (*Marsh* v. *City of Buffalo*, 59 N. Y. 280.)

" But the extrinsic evidence resorted to in aid of the action must show the defect relied upon to be one affecting the jurisdiction of the municipal officers." (*County of Monroe* v. *City of Rochester*, 154 N. Y. 570.)

Error in the assessment itself is not a jurisdictional defect. Jurisdiction of the subject-matter is the power to adjudge concerning that matter, and does not depend upon the ultimate determination arrived

at, or the means by which such ultimate determination is reached. (*Hunt* v. *Hunt*, 72 N. Y. 217; *Sweet* v. *Merry*, 109 id. 83.)

In making an assessment the officers making it act judicially, as was said in *O'Reilley* v. *City of Kingston ;* and where they have jurisdiction to make an assessment, their judgment cannot be reviewed in a collateral action. (*Hoffeld* v. *City of Buffalo, supra ; County of Monroe* v. *City of Rochester, supra.*)

Having jurisdiction to make an assessment, the erroneous, irregular or unjust way in which they make it does not deprive them of jurisdiction, so that their proceedings may be set aside by an action in equity.

The remedy for an erroneous, unjust or irregular assessment is not by an action in equity, but by certiorari. (*County of Monroe* v. *City of Rochester, supra,* 578.) Remedies are also provided by various local statutes, and in villages by the General Village Law (Chap. 414, Laws of 1897) under which this proceeding is taken.

My conclusion, therefore, is that there is nothing in the cases really conflicting with the principles heretofore stated by me in regard to apportioning assessments for public improvements.

In this case we are not hampered by any of the restrictions imposed by statutes providing for reviews for frauds or irregularities in the proceedings, or by the limitations of an action in equity to remove a cloud upon title.

The law under which this assessment was made provides for a review by the County Court, and that it may reverse the action of the apportioning officers and order a new assessment, where the assessment appealed from is erroneous, unequal or inequitable.

This is not a collateral attack upon the judicial action of the assessing officers, but a direct review of their action by appeal, the same as an appeal from the decision of a trial court to an appellate court, and errors of judgment can be reviewed as well as other errors. The right of appeal is given in general terms, and the whole matter is open for review, not only the proceedings prior to and after the assessment, but the apportionment and assessment itself; there are no restrictions or limitations upon the court as to what errors it may consider; any error or irregularity resulting, or that may result in injury, is sufficient to reverse the action of the commissioners.

In *The People ex rel. Parker* v. *Jeff. Co. Court* (55 N. Y. 604),

which was a proceeding under a statute which gave the County Court power to review an assessment, and to affirm, reverse or modify it, it was held that where it appeared that the rule of the apportionment of the assessment was erroneous, the County Court was not concluded by the return of the commissioners or the testimony of one of them as to what rule of apportionment was adopted, but that the question was an open one to be determined upon the evidence. " That the duty of apportioning the assessment according to a real and not a formal judgment of benefit, cannot be evaded without disregard of the law."

And an assessment and apportionment per acre having been made instead of an apportionment according to benefits, that such an apportionment was erroneous, and the assessment was set aside.

In this case, in the 2d clause of their report, the sewer commissioners say " That such expense (that is, of the sewer) be and the same hereby is apportioned upon the lands within said area in proportion as nearly as may be to the benefit which each lot or parcel will derive therefrom ;" construing that to be a declaration that they did apportion it according to benefits, we are not concluded by it if the remainder of their record or the evidence shows the contrary.

The 3d clause of their report shows that the assessment was made per lineal foot of frontage on each side of the street.

And the assessment made upon the property of the appellant Merrill shows that it was made per lineal foot frontage. The amount of his assessment is $164.19, his foot frontage upon the street is 195 feet, dividing one by the other gives .842, the amount the commissioners say they fixed upon as the amount to be assessed per lineal foot front.

Of course there may be cases where an assessment according to foot frontage may be a proper and legal assessment even under a statute requiring the assessment to be for benefits.

Where the lots are substantially alike, except as to the number of lineal feet fronting the street improved, with practically the same facilities for using or enjoying the improvement, and where each is improved or unimproved substantially alike, in such cases the foot frontage upon the street may measure the benefits derived by each owner.

But such is not the case here. Some of the property fronting

upon the street is occupied by brick blocks used for business purposes, other lots are occupied by dwelling houses, and other lots again are vacant; the property of one of the appellants is urban farm property; some cannot drain into the sewer except by crossing the land of another person; as to some, it is, to say the least, doubtful whether it can drain into the sewer at all; yet the same assessment is made per foot front upon all.

The improvements upon the property and their value does not seem to have been at all considered.

This is not like the case of *Hoffeld* v. *City of Buffalo (supra)*, where it affirmatively appeared that the assessors took into consideration the value of the buildings and other improvements upon the lands, but concluded that the benefits were not affected by such improvements or their value, and when the court said, " So far as appears in the present case the cause of the plaintiff's complaint may have been the result of mere error in judgment of the assessors. And although the assessment was not illegal, it may have been erroneous."

Here such fact does not appear, and if it did, we would not be precluded, as was the court in the *Hoffeld* case, from reviewing such determination, as being erroneous, inequitable and unjust.

A sewer laid in front of a vacant lot undoubtedly increases the market value of that lot, for, although not available for present use, the ability to use it in the future when such lot is built upon is of value; it increases the value of the lot because so much less is to be done, and expense gone to, to render the lot available for building purposes.

But it is not benefited to the same extent as the lot that is already built upon; for that no additional expense is necessary; as to it, the sewer fulfills its full measure of usefulness; the sewer can be used at once, and is both a present and continuing future benefit to the lot.

Some improved lots may be benefited to a greater extent than other improved lots, depending upon the character and extent of the improvement. And to hold that it makes no difference in the benefits received whether a lot is improved or not, and to assess the vacant lot an equal amount with the lot built upon, with its needs to dispose of its sewage and refuse water, merely because each lot has the same number of feet fronting upon the street, is erroneous,

unjust and inequitable, and such an assessment should not be permitted to stand.

Again, I do not see how the statute in this case can be complied with, without taking the value of the property benefited into consideration.

Section 268, after providing that the expense shall be apportioned as nearly as may be according to benefits to be derived, proceeds as follows: "And the ratio of such benefit shall be established."

This is a very unusual provision in a statute, and it is not surprising that there has been some embarrassment in determining what was meant by it, and in complying with its terms.

Ratio is variously defined to be, "The relation between two numbers or two magnitudes of the same kind." "The relation between two similar magnitudes in respect to quantity." "The relation between two similar quantities in respect to how many times one makes so many times the other." "Especially the relation expressed by indicating the division of one quantity by the other, or by the factor that multiplied into one will produce the other." "Relative amount." "Proportion." (Century Dict.; Worcester's Dict.; Standard Dict.)

The sewer commissioners have not established a ratio within any of these definitions.

In the 3d clause of their report they say "That the ratio of such benefit is hereby established at eighty-four and two-tenths cents ($.842) per lineal foot of frontage on each side of said streets, and upon the frontage of each parcel of property on said streets."

And it will be seen from the extract from the 4th clause heretofore set forth in the statement of facts, that the ratio of benefit established by them is the same as the amount assessed upon each piece of property.

They nowhere establish any proportion or ratio, but simply fix the amount to be assessed, and call that the ratio.

It is difficult to see how the ratio and the amount to be produced by the use of that ratio will in every instance be one and the same thing.

I do not see how a ratio can be established without taking the value of the property to be assessed into consideration. You can

no more establish a ratio or proportion between the expenses of a sewer and a lot or parcel of land as such than you can between a horse and a hand cart, because they are not quantities or things of the same or similar kind.

The only way to establish a ratio or proportion between them is to first reduce them to quantities of the same kind so that one can be divided or multiplied by the other and the result be a quantity of the like kind.

This can be done if the value of the property benefited, as expressed in dollars and cents, like the expense of the sewer, is taken into consideration; then we have quantities similar in kind which can be divided into, or multiplied by, each other, the result being a quantity of the same kind, but different in magnitude. A ratio can thus be readily established, which when applied to the several lots or parcels of land will produce an equitable result if the values are properly adjusted, and thereby the principle set forth in *People ex rel. Howlett* v. *Mayor, etc., of City of Syracuse* and cases cited, and *People ex rel. Howlett* v. *Mayor, etc., of City of Syracuse (supra)* can be carried into effect.

The claim is also made that some property within the area adjudged by the commissioners, by their map, to be benefited by the sewer, has not been assessed.

I am not clear whether this is the same property referred to in the report of the commissioners as being omitted because not benefited or not.

But however that may be, it may not be amiss to state that omitting any portion of property within the assessment district from assessment invalidates the apportionment. (*Matter of N. Y. Prot. Episcopal Public School,* 75 N. Y. 324; *Hassan* v. *City of Rochester,* 67 id. 528.)

The order appealed from should be reversed, with costs and disbursements of this appeal, and the assessment set aside and a new assessment ordered, and the case remitted to the County Court of Madison county, to appoint commissioners to make a new apportionment, pursuant to section 270 of chapter 414 of the Laws of 1897.

All concurred.

MERWIN, J. :

I concur in reversal. Under section 270 of the Village Law the County Court had power to determine whether the assessment was erroneous, unequal or inequitable. The sewer commissioners in effect determined that each lot was benefited in proportion to its frontage. This, according to the facts presented to the County Court, was erroneous and inequitable, and that court should have so held. An appropriate method for ascertaining the amount of benefit to each lot is laid down in *Elwood* v. *City of Rochester* (43 Hun, 102, 121). The amount of benefit being ascertained, the apportionment under the statute is to be made accordingly.

Order reversed, with costs and disbursements, and the assessment set aside and new assessment ordered and the case remitted to the County Court of Madison county to appoint commissioners to make a new apportionment pursuant to section 270 of chapter 414 of the Laws of 1897.